# Richmond.

## David N. Rust, Jr. v. Indiana Flooring Company, A Corporation, and Others.

October 30, 1928.

Holt, J., having taken his seat on the Supreme Court of Appeals did not sit in this case.

The opinion states the case.

*J. K. M. Norton*, for the appellant.

*Christopher B. Garnett*, for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

This is an appeal from a decree in nine suits in chancery, consolidated and heard together by consent of parties, under the short style of Indiana Flooring Company, Incorporated, and others, against Ralph Weston and others. The objects of these suits were to enforce mechanic's liens against the property of Ralph Weston. The consolidated causes were referred to Commissioner Ball to take, state and report the liens upon said property, and their order of priority. Rust was the holder of deeds of trust to secure the payment of $10,500.00 loaned to Weston to build upon the lots in suit. Commissioner Ball reported that Rust had a first lien on the value of the land exclusive of the buildings and a second lien upon the land and buildings subject to mechanics' prior liens upon the buildings and structures. Rust excepted to this report. His exceptions were overruled and the report was confirmed, and Rust has appealed his case to this court.

This consolidated cause represents many complicated facts and questions, but a statement of the salient facts of the case will give a clear comprehension of the issues to be decided by this court.

Weston was the owner of two vacant lots, Nos. 59 and 60. of Kay-Alger Company's Addition to Ashton Heights in the county of Arlington, Virginia. He purposed to build three houses upon the two lots. He borrowed from David N. Rust, Jr., $10,500.00, evidenced by his three negotiable notes for $3,500.00 each payable to Minnie L. Travis, and secured the same by three deeds of trust conveying said lots to David N. Rust, Jr., trustee.

It was part of this agreement that the building loan money should be paid by Rust to Weston as the work progressed, to be paid by him for labor done and material furnished in the erection of the buildings. This was done and Rust gave some supervision to the buildings and satisfied himself that the money was used according to agreement. While the notes were payable to Minnie L. Travis, it is an uncontroverted fact that Rust was the owner of said notes and had furnished the money himself.

Weston did not let the buildings to a single contractor, but proceeded to build the houses himself by independent contracts, for various parts of the work with different contractors.

Before the buildings were completed Weston became insolvent, and his creditors proceeded by attachment, and mechanic's liens to subject the land and buildings to their respective claims. Judge H. R. Thomas, an attorney of high standing and character, represented several of these creditors. This was known to Rust who employed Judge Thomas to represent him and Minnie L. Travis in any litigation that might arise out of the subjection of the lots to the conflicting claims of the various creditors.

The first action instituted was an attachment by Murphy & Ames, Incorporated, against Ralph Weston,

Rust, trustee, and other trustees in deeds of trust, securing debts therein named. This attachment apparently stopped the building operations and the court proceeding in this action, as if it was a chancery suit, appointed receivers to preserve and complete the buildings, and then referred the case to Commissioner Ball for such accounts as are usually required in proceedings to subject land to the payment of debts and liens.

On December 10, 1924, Commissioner Ball began taking testimony on which to base his report. The defendant and all mechanic's lien creditors (except Louis Hartig and L. A. Walker, represented by C. T. Jesse) were present by attorney. Rust was present in person and by his attorney. Before any evidence was taken Judge Thomas dictated the following stipulations, which is the basis of the controversy.

"It is agreed by the parties to this controversy, both mechanic's lien creditors, judgment creditors and creditors filing claims with the receivers as unsecured claims, and by Ralph Weston in person and counsel, that the statute requiring the filing of a chancery suit to enforce the mechanic's liens herein shall be waived, and that we shall proceed at this hearing and at further hearings and proceedings in this case in connection with the receivership of the said Ralph Weston as though the suits to enforce the mechanic's liens or petitions had been filed as required by the statute.

. "The defendant and all parties represented at this hearing agree that the deed of trust in favor of Kay-Alger Company, dated July 23, 1923, and recorded in deed book No. 196, at page 11, should be second only as to priority to the three deeds of trust payable to Minnie L. Travis.

"E. B. Johnson, secretary of Fries Beall & Sharp Company was then upon the stand and proved its account and the filing of its mechanic's lien for same. Weston admitted of record its correctness. Whereupon Rust was examined, proved his debt, and the manner of the disbursement of the money loaned. He testified that the value of the houses with the ground was $7,500.00, each, and probably $8,000.00."

In order to save time and labor Judge Thomas then dictated the following admission:

"The defendant, Ralph Weston, admits the correctness of the following accounts upon which mechanic's liens have been filed, to-wit:

"Indiana Flooring Company, $977.00 with interest from December 21, 1923. * * * * Fries Beall & Sharp Company, $2,360.00 with interest from January 10, 1924, and further admits that the material and labor represented by said claims entered into the construction of the dwelling houses erected on lots 59-60 Kay-Alger subdivision of Ashton Heights, and all parties represented at this hearing agree that the said labor and materials entered into the construction of said dwelling houses."

Nothing further appears to have been done in the attachment proceedings, and Jesse having refused to submit his client's claims therein, the Indiana Flooring Company on December 10, 1924, filed its mechanic's lien suit against Weston, Rust, trustee, the other trustees and the receivers in the attachment. It alleged in its bill that the said receivers had a lien amounting to $2,319.32 for money used in completing said buildings. This suit was matured as to Rust, trustee, Minnie L. Travis, and others by acceptance of service of process by H. R. Thomas, their attorney.

Other suits and petitions were filed to subject the land and buildings to mechanic's liens, and on the 28th of February, 1925, by consent of parties, all these suits were consolidated (*except the attachment*), and the consolidated causes were referred to Commissioner Ball to take and state the usual and necessary accounts required by law in such cases.

Commissioner Ball gave notice that on March 13, 1925, he would proceed to take the accounts provided for by said decree. On May 5, 1925, he proceeded to take proof of the mechanic's lien of Louis Hartig Company, L. A. Walker, and Fries Beall & Sharp Company. Rust was present in person and by counsel. He was examined as a witness in his own behalf and cross-examined by the other attorneys.

The witnesses for the above mechanic's lien creditors were examined and cross-examined by Judge Thomas and the other attorneys present, and proved all the essential facts to establish their respective liens and no objection was made or suggested as to their validity.

Commissioner Ball, on January 8, 1926, filed his report wherein he set forth the various liens upon the lots of Weston with the order of their priority. The Rust claim of $10,500.00 secured by deeds of trust was made the first lien upon the value of the land without the buildings, and the mechanic's liens the first lien upon the buildings. Thereupon, on January 18, 1926, Rust filed an exception to said report, stating that he was a *bona fide* holder of the notes secured by said deeds of trust, that they were of record prior to the beginning of the improvements on the property, and the testimony showed that all the money secured by said deeds of trust was used in the payment for labor and materials used in the construction of the houses

erected upon the said property, and that the only interest upon which the mechanic's lien could attach is the equity of redemption of Ralph Weston in the property after payment of said deeds of trust.

Apparently none of the testimony upon which the commissioner made his findings was filed with his report, and the decree did not require it. After filing the above exception Judge Thomas was discharged as attorney for Rust, and Judge J. K. M. Norton was employed to represent him, and upon the 25th day of February, 1926, filed additional exceptions to said report and the decree consolidating the causes and referring same to Commissioner Ball. The exceptions are very numerous, covering eight pages of the record. It will be noted that no evidence to sustain the exceptions was filed with them.. This may be due to the fact that the exceptant claims therein that a statutory lien is a judicial matter for the determination of the court, and cannot be delegated to a commissioner for determination. There is nothing in the mechanic's lien statute forbidding the court to refer the case and proof of liens to its commissioner. The suit is required to be brought on the equity side of the court, and its general powers of reference to one of its commissioners to determine the validity of the liens and their priority has not been curtailed. This has been the common practice and has not before been questioned in our knowledge.

In order that his exceptions might be considered by the court, he had to do away with the effect of the consent of his counsel to the decree consolidating the causes, and the reference to the commissioner; the acceptance of service of process and various notices and his appearance at every stage of the proceedings in these cases thereby waiving process and notice; he

filed a petition in the consolidated causes wherein he admits the general employment of Judge Thomas, and disclaims any wrong-doing by his said attorney or any intention to reflect upon him in any way, but claims that he understood that he had *a prior lien upon the land and buildings* in favor of his deeds of trust to the mechanic's liens; this petition was answered by the mechanic's lienors wherein it is alleged that his plea is based upon ignorance of law, and in addition thereto he was informed by the attorneys in the case that he only had a lien by reason of his deeds of trust upon the land, and acquiesced therein throughout the entire proceedings. No evidence was submitted to the court to sustain the allegations of his petition, and *estoppel by the record* remains unaffected.

 The deeds of trust were put upon the land prior to the commencement of the buildings, and section 6436 became a part of said trusts so far as the lien thereof is concerned. Rust by his conduct recognized the force and effect of this statute, and saw to the application of the money in the erection of the buildings. His deposition taken before the commissioner proved the value of the land to be $3,000.00 and the value of the three buildings with the ground was $7,500.00 each. He further testified that he paid the money loaned to Weston in small checks to be by Weston paid for labor and material that went into the houses and that he went to the buildings on occasions to determine the amount that had been expended for labor and material in the erection of said houses. His purpose in this evidence was to convert his loan of money into a mechanic's lien or give his trust priority over the mechanic's lien, because the money had been used to create the value. This cannot be done. The theory of the mechanic's lien law is based upon an

equitable vendor's lien, and as the lien for the loan of money is solely a matter of collateral contract, it cannot be novated into a mechanic's lien by applying the money to payment for labor and material. *Fidelity Loan & Trust Co.* v. *Dennis*, 93 Va. 504, 25 S. E. 546; *Crook Horner & Co.* v. *Old Point Comfort Hotel* (C. C.), 54 Fed. 604; *DeWitt* v. *Coffey*, 150 Va. 365, 143 S. E. 710.

■ The appellant undertakes to escape the effect of the priority of his lien fixed by statute, by setting up his understanding of the last paragraph of the stipulation waiving filing of mechanic's lien suits in the attachment action. This is not justified when the language is construed in the light of the law. This stipulation provided that the deed of trust in favor of Kay-Alger Company "should be second only as to priority to the three deeds of trust payable to Minnie L. Travis." This was but a statement of the law. He was given priority over this deed of trust upon the value of the land and this was all that the parties intended thereby. Besides the stipulation was never carried into effect for the reasons above set forth, nor were the admissions of record any part thereof. These were admissions by Weston of the correctness and validity of the mechanic's liens filed upon his lots; and of the other parties that the labor and material went into the buildings.

■ ■ It is further contended by the appellant that he not was not made a party defendant to some of these proceedings in his individual capacity but as trustee, and that Minnie L. Travis the straw payee of the notes was not a party to some of the suits. This is a highly technical defense. He was the owner of the obligations from the beginning of the transaction. This was known to all the attorneys in this case. He had so stated to

Jesse and had defended the cases in his individual capacity, and proved his debt before Commissioner Ball. It is clear that where a party is sued as trustee, and is the holder of the note which is secured by his deed of trust, he is in reality sued as mortgagee, and the word trustee may be disregarded as surplusage. *Guyer* v. *Union Trust Company*, 55 Ind. App. 472, 104 N. E. 82, 89. See 1 Minor on Real Property, section 676, page 755; *Morgan* v. *Glendy*, 92 Va. 86, 22 S. E. 854; *Chewning* v. *Cox*, 1 Rand. (22 Va.) 306, 10 Am. Dec. 530.

In order to further strengthen his position, the court, upon his motion, permitted him after six months to file his answers to each bill in the consolidated suit. These answers denied the allegations of the respective bills, and called for strict proof. Thereupon the evidence upon which Commissioner Ball acted was written up and upon request of appellant's counsel filed as part of the record. The learned chancellor reviewed the whole record as then made up, and confirmed Commissioner Ball's report. The appellant assigns several specific errors in his petition for appeal, which it is necessary to consider, notwithstanding it may require some repetition.

The appellant in his petition for an appeal contends that the commissioner erred in allowing the amount of $2,319.32 expended by the receivers appointed in the attachment of Murphy & Ames, Inc., against Weston and others for material and labor expended to complete the houses.

The Indiana Flooring Company, Incorporated, in its bill set out this claim as a lien upon the buildings and made the receivers parties to the suit. The claim and parties were before the court. All parties in interest were benefited by the expenditure. No objection was

made to its allowance by Rust or his attorney or by any of the other parties. Its justice seems to have been a concession. Nor was any exception taken thereto in the trial court.

The objection appears for the first time in his petition for this appeal and is evidently based upon the theory that the order of the court in authorizing the receivers to complete the buildings and issue receivers certificates therefor was void upon its face, and therefore a nullity.

Prior to the Code of 1919, attachment could be brought either at law or in equity. The revisors undertook to simplify the procedure and practice. Section 6380 of Virginia Code provides that the practice and procedure in attachments, "except as otherwise provided, shall be the same, as near as may be, as in personal actions." Judge Burks' address on the Code of 1919, 5 Va. Law Reg. N. S. 97, 133, states the purpose of the revisors in the new statute on attachments was to simplify the procedure, but "in the main, the substantive law on the subject is left untouched."

In section 6389, the last paragraph provides: "The court, or the judge thereof in vacation, may interpose by a restraining order, or the appointment of a receiver, or otherwise to secure the forthcoming of the specific property sued for, and so much other estate as will probably be required to satisfy any further order that may be made in the cause."

The above provision shows that the legislature never intended to exclude the equity practice from the proceedings by attachment. The plain purpose was to simplify the form of procedure, and allow the courts to use their equitable or legal modes of practice as would best promote a fair trial and justice. 1 Barton's Chancery Practice (3rd ed.) 821. In the attachment

action only real estate was levied on. An account of liens was ordered, as the property could not be sold until it was taken. Section 6405. No objection was made to this order of reference. Prior to the Code of 1919, had this attachment been in equity, the court would have exercised all the powers of such courts. It appears that the court and attorneys consented to said orders in the belief that the legislature did not intend to curtail the powers or sound judicial discretion of the court in matters of procedure. It is not necessary for us to pass upon this construction of the statute, and we do not intend to do so in this opinion, so far as the receivers certificates are concerned.

The court plainly had the right under the statute to appoint the receivers to preserve the property, and the only question that could arise in *the action* was as to that part of the order which authorized the completion of the buildings. This was for the best interests of all parties, they having consented to the same, and received the benefits thereof, and no objection has been made thereto; therefore, that this court would not be justified in this collateral proceeding in declaring the receivers' certificates not a lien upon the property.

██ ██ No objection was made in the attachment to the order; it was not consolidated with the mechanic's lien suits, and no writ of error has been sued out in the attachment, so that neither the action nor the record in the same is before this court. It is an axiom of appellate practice, that only questions raised in the trial courts can be reviewed in this court by writ of error or appeal, unless the order or decree is void, upon the face of the record, for lack of jurisdiction or otherwise. This order not being void, but at best only voidable for error, we cannot consider the same.

The appellant alleges error in the finding of the commissioner that the claims of the Indiana Flooring Company, Incorporated, Louis Hartig, L. A. Walker and Fries Beall & Sharp Company were valid mechanic's liens duly proven and binding. The foundation for this error, as set out in his petition, is the action of the court in referring the case to one of its commissioners to report upon the claims; that it was the duty of court to take proof of the liens, and until that was done that no liens were established. After the appellant's petition, the answer of the mechanic's lien creditors, and his answers to the bills were filed the evidence and stipulations of counsel were written out and filed in the record. This included the stipulation and admissions of parties in the attachment suit filed in the mechanic's lien suit.

It was this stipulation made in the attachment suit which also waived the provision for bringing chancery suits to enforce the mechanic's liens and which is copied in the earlier part of this opinion, the appellant claimed gave him the priority of lien by agreement upon the land and buildings. He here claims that if this stipulation is not binding neither are the admissions, and that by reason of the failure of said stipulation he was not bound by any acceptance of service of process or notice, any appearances, stipulations, admissions nor acts of his counsel, Judge Thomas. The admissions made of record by the owners, Weston, had no connection with any agreement he might have thought he had for priority with the other parties.

And further, that he had the right by reason of his misunderstanding to object to all the proceedings in the case, and have the liens reported by the commissioner annulled for lack of independent proof. If a party can appear before a court by distinguished and

able counsel who conducted his case according to right and justice, and because he misunderstood his legal rights, such party can subsequently reopen the case and every part thereof, there will no longer be any such rule of law as estoppel of record.

The learned chancellor reviewed the evidence and found the mechanic's liens fully established as required by law, but we will review the same to see if there is error in his decision.

██ ██ Weston admitted of record the correctness of the accounts of the Indiana Flooring Company for $977.00 with interest from December 21, 1923, and Fries Beall & Sharp Company for $2,360.03 with interest from January 10, 1924, upon which mechanic's liens had been properly filed. He further admitted that the material and labor represented by said claims entered into the construction of the dwelling houses erected on his lots 59-60 Kay-Alger Subdivision of Ashton Heights, and all parties represented at the hearing, including Rust, agreed that said labor and materials entered into the construction of said dwelling houses. Admissions of record are the most convincing proof and are not set aside except for fraud and mistake.

██ It is further claimed that the Indiana Flooring Company's account is not itemized as required by section 6437 of the Code. It agreed with Weston to put down new wood floors in the three dwelling houses for $969.00 and furnished four rolls of building paper at $2.00 each. The account clearly itemized the things contracted for and supplied. The law does not require anything further.

The claim of Fries Beall & Sharp Company was not admitted by Weston to be correct and that the material went into the houses, but these facts were also proven by its secretary both in the attachment proceedings

and in consolidated chancery suits. The court was clearly right in overruling the appellant's exceptions to these mechanic's liens.

Various objections are made to the mechanic's lien of Louis Hartig. Chief among these is the statute of limitations, section 6433 of the Code, which forbids a suit to enforce a mechanic's lien to be brought "after twelve months from the time when the whole amount covered by such lien has become payable." The account was proven before the commissioner and the last item furnished the 28th day of November, 1923, but the account was proven to be payable on January 1, 1924. The mechanic's lien was filed February 7, 1924, and suit was brought December 12, 1924. No exception or objection was made to the account at the hearing before the commissioner nor suggestion that the suit was not brought within the twelve months required by statute. In view of what has been previously said about the acceptance of service of process directed to Rust, trustee, this objection will not be considered again. The objections to this claim are without merit, and they were properly overruled.

As to the A. J. Walker claim, presented by petition in the Hartig suit, it is charged that no rule was issued upon the same, but Rust and his counsel were present before the commissioner when the evidence was taken to prove the claim and Thomas cross-examined the witnesses, this was a waiver of summons by appearance if any were necessary. The evidence established the claims, and proved that work was done on the houses on April 3, 1924; that the mechanic's lien was perfected on the 31st day of May, 1924, and interest was claimed from April 3, 1924, the last day he worked on the job, and he filed his suit on the 2nd day of January, 1925, while work was suspended on or about

January 14, 1924, Weston had induced Walker to continue work thereon under the assurance that Rust would pay him. The commissioner saw the witnesses and heard the examination and cross-examination. He allowed the claim and his determination is without error.

We have examined the record with great care, as it was complicated and many authorities were cited which are good law; but the facts in these cases do not bring them within the principles of those authorities.

We find no error in the decree appealed from and same is affirmed.

*Decree affirmed.*