**W. T. JONES AND COMPANY, Inc.,**
v.
**FOODCO REALTY, INC., et al.**
Civ. A. No. 531.

United States District Court
W. D. Virginia,
Lynchburg Division.
June 15, 1962.

**880**

Arthur B. Davies, III, Hickson & Davies, Lynchburg, Va., for W. T. Jones & Co.

Roy E. Cabell, Jr., Richmond, Va., for Foodco Realty, Inc.

Lawrence C. Musgrove, Asst. U. S. Atty., Roanoke, Va., for the United States.

W. H. Overbey, Rustburg, Va., for Campbell Co. Bank and W. H. Overbey, trustee.

Howard W. Rhodes, Jr., Lynchburg, Va., for Mid-State Electric Supply Co.

Royston Jester, Jr., Lynchburg, Va., for Falwell Well Corp.

Jos. L. Lyle, Jr., Hickson & Davies, Lynchburg, Va., for Noland Co., Inc., Lynchburg Ready Mix Concrete Co. and Marvin Mosely.

MICHIE, District Judge.

This suit was originally brought by the plaintiff, W. T. Jones and Company, Incorporated (hereinafter called the Plaintiff), in the Circuit Court of Campbell County, Virginia, to enforce a mechanic's lien on certain property in that county owned by the defendant Foodco Realty, Inc. (hereinafter called Foodco). Foodco, its then tenant and sole stockholder, Famous Virginia Foods Corporation (hereinafter called the Parent Company), Campbell County Bank (hereinafter called the Bank), the holder of a note secured by a deed of trust on the property in question, the trustees named in the deed of trust and five other mechanics and materialmen who had filed mechanic's liens against the property, were made parties.

The United States was not originally made a party to the suit. But, though not disclosed by the deed of trust, the Small Business Administration had participated with the Bank in the loan to Foodco to the extent of 90 per cent thereof. Consequently the United States, on its motion, was allowed to intervene in the suit and the suit was then removed to the United States District Court for the Western District of Virginia. The court referred the suit to a Special Master with instructions to report on various matters, the only ones now in controversy involving the priority of the various liens or claimed liens on the property. In due course the Master filed his report and the United States filed objections to the report. The matter is now before me on these objections.

The facts, so far as pertinent, are as follows.

Foodco was organized by the Parent Company for the purpose of taking title to certain real estate and to construct a building thereon which would be leased to the Parent Company. Shortly after its organization it purchased the land for $10,000.00 and erected a warehouse and other improvements on it at a cost of approximately $41,000.00. It seems to be agreed that at the time of the hearing before the Special Master the land and these original improvements had a value of only $25,500.00.

Subsequently Foodco approached the Bank for a substantial loan in order to make additional improvements. The Bank did not care to make such a loan by itself but it brought in the Small Business Administration, an agency of the United States organized under the Small Business Act, 15 U.S.C.A. §§ 631–647. A loan of $85,000.00 was made by the Bank and the United States to Foodco, the Bank participating to the extent of only 10 per cent and the S. B. A. for the

remaining 90 per cent. The note appears to have been made payable to the Bank alone and was secured by a deed of trust upon the real estate which, generally speaking, was in a form usual in Virginia and which expressly provided that the provisions of §§ 55–59 and 55–60 of the Code of Virginia (dealing generally with deeds of trust) would apply. It also contained certain words, the meanings of which are more or less unintelligible when the words are considered by themselves, but which are given meaning by those Code sections. And the deed of trust contained a covenant of Foodco "not to create or permit to accrue any debt, lien or charge which would be prior to or on a parity with the lien" of the deed of trust.

The deed of trust was recorded on August 13 1959 and the work on the construction for which the $85,000.00 had been borrowed commenced on August 21 1959. On January 25 1960 the Parent Company took possession of the newly constructed factory under a ten-year lease providing for a rental of $2,000.00 per month. However the plaintiff did not complete its work on the premises until April 9 1960. Within the next few months thereafter the Plaintiff and Noland Company, Marvin Mosely and Falwell Corporation filed proper mechanic's liens for work or supplies furnished to the property, Midstate Electrical Supply Company filed such a lien, the timeliness of the filing of which was contested but which was allowed by the Master, and Ready-Mix Cement Co. filed a document claiming such a lien but the claim was disallowed by the Master because it was filed too late. There are also various subsequent judgments, the first of which was rendered November 29 1960 in the Circuit Court of Campbell County. None of these have been satisfied but they are clearly subordinate to the note secured by the deed of trust and to the properly perfected mechanic's liens. There are also unpaid Campbell County real estate taxes of 1960 and 1961 and 1962 taxes are a lien though not yet payable.

On March 3 1961 the Parent Company was declared bankrupt and shortly thereafter terminated its lease of Foodco's property. Foodco was then left with property which had cost $156,229.52 but for which, apparently, it could find no ready tenant and which was valued at the hearing before the Master at from $78,-000.00 to $80,000.00. No question has been raised as to the substantial accuracy of this appraisal and it seems to be generally conceded that Foodco is insolvent in the sense that its assets are worth less than the total of its debts. Whether it is also insolvent in the sense in which the word is used in the Federal priority statute, 31 U.S.C.A. § 191, will be later discussed.

At some time, apparently subsequent to the commencement of this proceeding, the Bank assigned to the United States all of its interest in the note secured by the deed of trust in consideration of an agreement on the part of the United States to turn over to the Bank 10 per cent of any recovery received by the United States upon the note.

The question involved is whether under these circumstances the debt secured by the deed of trust or those of the mechanic's liens which were properly filed within the time required by Va. Code, § 43–4 are entitled to priority. Minor questions are whether the mechanic's lien of Midstate Electrical Supply Company was so filed and the priority of the real estate taxes.

On this state of facts the Special Master held that the debt secured by the deed of trust was entitled to priority to the extent of the value of the land and the improvements that had been placed on the property at the time the deed of trust was recorded and, as stated above, that value, as of the time of the hearing, seems to have been agreed to be $25,-500.00. But the Master further held that the mechanic's lienors and materialmen who had duly perfected their liens were entitled to priority over the holder of the note secured by the deed of trust as to any additional sum which might be realized upon a sale of the property.

The United States contends that this latter conclusion of the Master was erroneous for three reasons:

First, it contends that in matters affecting the priority of claims of the Federal government general "Federal" commercial law rather than state law prevails, even where the Federal priority statute is not applicable; that the rule of the Federal law is "the first in time is the first in right"; and that therefore the claim of the United States, having originated first in point of time, is entitled to priority over the mechanic's liens even though the latter might be entitled to priority under Virginia law; second, that, in any event, even if Virginia law should be applied, the mechanic's liens would not be entitled under that law to priority over the loan since the proceeds of the loan were used for the improvement of the property just as much as the labor and material that gave rise to the mechanic's liens; and third, that in any event the Federal priority statute, 31 U.S.C.A. § 191, is applicable since Foodco is "insolvent" within the meaning of the word as there used and that under that statute the United States is entitled to priority even over otherwise prior mechanic's liens.

### The Virginia Law.

■ It will simplify matters to dispose first of the contention that even under Virginia law the lien of the United States would prevail since the proceeds of the loan, like the work and supplies furnished by the mechanics and materialmen, were used for the improvement of the property.

There is an old Virginia case that so held: Iaege v. Bossieux (1859), 15 Grat. (56 Va.) 83. However that case was decided long before what is now § 43–21 of the Code of Virginia took its present form. That section, so far as material, now provides:

"No lien or encumbrance upon the land created before the work was commenced or materials furnished shall operate upon the building or structure erected thereon, or materials furnished for and used in the same, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied * * *.

"In the enforcement of the liens acquired under the previous sections of this chapter, any lien or encumbrance created on the land before the work was commenced or materials furnished shall be preferred in the distribution of the proceeds of sale only to the extent of the value of the land estimated, exclusive of the buildings or structures, at the time of sale, and the residue of the proceeds of sale shall be applied to the satisfaction of the liens provided for in the previous sections of this chapter. * * * *"

The quoted language would seem quite clearly to set this question at rest. But if there could have been any doubt it was resolved in Rust v. Indiana Flooring Company, 151 Va. 845, 145 S.E. 321. The facts in that case were almost identical with those in the case at bar. Rust had advanced money secured by a deed of trust upon the property improved and had actually endeavored to see to the application of the money loaned towards the payments for the improvements. But to no avail. The court said at pp. 856–857 of 151 Va., at p. 323 of 145 S.E.:

"The deeds of trust were put upon the land prior to the commencement of the buildings, and section 6436 [1] became a part of said trusts so far as the lien thereof is concerned. Rust by his conduct recognized the force and effect of this statute, and saw to the application of the money in the erection of the buildings. His deposition, taken before the commissioner, proved the value of the land to be $3,000 and the value of the three buildings with the ground was $7,500 each. He further testified that he paid the mon-

---

1. Now § 43–21 of the Code of 1950.

ey loaned to Weston in small checks to be by Weston paid for labor and material that went into the houses, and that he went to the buildings on occasions to determine the amount that had been expended for labor and material in the erection of said houses. His purpose in this evidence was to convert his loan of money into a mechanic's lien or give his trust priority over the mechanic's lien, because the money had been used to create the value. This cannot be done. The theory of the mechanic's lien law is based upon an equitable vendor's lien, and, as the lien for the loan of money is solely a matter of collateral contract, it cannot be novated into a mechanic's lien by applying the money to payment for labor and material. Fidelity Loan & Trust Co. v. Dennis, 93 Va. 504, 25 S.E. 546; Crook, Horner & Co. v. Old Point Comfort Hotel (C.C.), 54 F. 604; DeWitt v. Coffey, ([150] Va. [365]) 143 S.E. 710."

It seems clear then that if the law of Virginia is applicable the mechanic's liens would ordinarily take priority over the deed of trust and the United States would be compelled to rely upon the Priority statute, 31 U.S.C.A. § 191, if it is to prevail.

## Is Virginia or Federal Law Applicable?

I believe that the United States is correct in its contention that in these circumstances "Federal Law" rather than state law should prevail and that under the doctrine that "the first in time is the first in right" the lien of the deed of trust should have priority over the mechanic's liens.

At first blush one might think that Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, had put an end to so-called "federal law" in such a situation. But all that that case held was that in controversies between private citizens, not affecting in any way contracts or commercial paper or other interests of the United States, the laws of the several states were to be applied rather than the concept of a "federal common law" which the federal courts had developed where the state courts had disagreed as to what the common law was.

This distinction was perhaps first made plain in Clearfield Trust Co. v. U. S., 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, though previous cases had foreshadowed it. See Board of Commissioners of Jackson County, Kan. v. U. S., 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Royal Indemnity Co. v. U. S., 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361; and other cases cited in the Clearfield case. But in that latter case the court plainly said at pp. 366–367 of 318 U.S., at p. 574 of 63 S.Ct.:

"We agree with the Circuit Court of Appeals that the rule of Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188], does not apply to this action. The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power. This check was issued for services performed under the Federal Emergency Relief Act of 1935, 49 Stat. 115. The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state. Cf. Board of Commissioners v. United States, 308 U.S. 343 [60 S.Ct. 285, 84 L.Ed. 313]; Royal Indemnity Co. v. United States, 313 U.S. 289 [61 S.Ct. 995, 85 L.Ed. 1361]. The duties imposed upon the United States and the rights acquired by it as a result of the issuance find their roots in the same federal sources. Cf. Deitrick v. Greaney, 309 U.S. 190 [60 S.Ct. 480, 84 L.Ed. 694]; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447 [62 S.Ct.

676, 86 L.Ed. 956]. In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards. United States v. Guaranty Trust Co., 293 U.S. 340 [55 S.Ct. 221, 79 L.Ed. 415], is not opposed to this result. \* \* \*

"In our choice of the applicable federal rule we have occasionally selected state law. See Royal Indemnity Co. v. United States, supra. But reasons which may make state law at times the appropriate federal rule are singularly inappropriate here. The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain. \* \* \* "

On the other hand the Court of Appeals for the Fourth Circuit has stated in U. S. v. Union Livestock Sales Company, Inc., 298 F.2d 755, that West Virginia rather than "Federal Law" governs the liability of a West Virginia auctioneer for conversion resulting from the sale of cattle which, unknown to the auctioneer, were covered by a chattel mortgage securing a loan from the Farmers Home Administration. As the court went on to hold that the West Virginia law was the same as the Government contended the federal law to be, a decision as to which law was applicable was perhaps not strictly necessary to a decision of the case. But the liability of the auctioneer in that case did not arise out of the terms or construction of the evidence of indebtedness that was involved in that case or the priority of the

Farm Administration loan over other indebtedness of the debtor. Hence, though I happened to participate in that decision, I do not regard it as applicable to this case which does involve the effect and priority of the note of Foodco which evidenced the loan which was made, to the extent of 90 per cent thereof, by the Small Business Administration. I think that here, as the Supreme Court said in the Clearfield case, "The desirability of a uniform rule is plain."

And as recently (1960) said by the Supreme Court in Aquilino v. U. S., 363 U.S. 509 at p. 512, 80 S.Ct. 1277, at p. 1279, 4 L.Ed.2d 1365:

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property \* \* sought to be reached by the statute.' Morgan v. Commissioner, 309 U.S. 78, 82 [60 S.Ct. 424, 84 L.Ed. 585, 1035]. Thus, as we held only two Terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law \* \* \*.' United States v. Bess, 357 U.S. 51, 55 [78 S.Ct. 1054, 2 L.Ed.2d 1135]. However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.' " citing eleven fairly recent Supreme Court cases.

■ It is true that many of the cases cited in Aquilino involved a federal tax lien and that in some of them the Fed-

eral Priority Statute, 31 U.S.C.A. § 191, was involved. But these aspects were not involved in all of them. The priority statute for instance was not involved in Aquilino itself. And no reason can be found for holding that Federal law should be applied in determining the priority of a federal tax lien but not in determining the priority of a federal mortgage or deed of trust lien. I hold therefore that priority is to be determined by the rules of federal law.

### What is the "Federal Law"?

In U. S. v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, the issue was as to the relative priority of various city and federal tax liens (including a city lien for water rent) arising on various dates. State law undertook to give the city liens priority. There were no priority provisions in the statutes creating the federal liens. And the federal priority statute (31 U.S.C.A. § 191) was not involved as there was no evidence that the debtor was insolvent within the meaning of the word as used in that statute and the statute does not apply unless the debtor is so "insolvent".

The court said beginning at p. 85 of 347 U.S., at p. 370 of 74 S.Ct.:

"It does not follow, however, that the City's liens must receive priority as a whole. We believe that priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right.' As stated by Chief Justice Marshall in Rankin v. Scott [12 Wheat. 177, 6 L.Ed. 592], supra:

" 'The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant.' 12 Wheat., at 179.

"This principle is widely accepted and applied, in the absence of legislation to the contrary. 33 Am.

Jur., Liens, § 33; 53 C.J.S. Liens, § 10b. We think that Congress had this cardinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.

\* \* \* \* \* \*

"Here the contest is between two groups of statutory liens, one specific and one general, attached to the same real estate, with no question of insolvency involved; therefore, 'the first in time is the first in right.'

"The State finds the rule of 'first in time, first in right' not applicable because of § 3672 of the Internal Revenue Code, which makes the lien of the United States invalid as to the prior recorded mortgages and the judgment in this case. It points out that the mortgagee could have paid the delinquent real-estate taxes and water rent, with the amount so paid becoming part of the mortgage debt covered by the mortgage lien, and suggests that the federal tax lien would therefore be invalid as to such amount by virtue of § 3672. From this and a belief that Congress did not intend, by giving mortgages and judgments priority over federal tax liens, to supersede state laws making certain interests superior to mortgages and judgments, the Supreme Court of Errors concluded that by enacting § 3672 Congress 'expressed the intention that federal liens should be subordinated to such mortgages and judgment liens as are described therein and, consequently, subordinated to such other incumbrances as have priority over those mortgages and judgment liens.'

"We do not agree. The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any

funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the federal lien. There is nothing in the language of § 3672 to show that Congress intended antecedent federal tax liens to rank behind any but the specific categories of interests set out therein, and the legislative history lends support to this impression."

This last statement is of special interest because § 17 of the Small Business Act (15 U.S.C.A. § 646) provides:

"Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States."

It will be noted that this grant of priority to other parties is limited to taxes. Had it wished to do so Congress could have included in such grant of priority mechanic's and other similar liens subsequent in point of time to the federal lien. To paraphrase the last sentence above quoted from the New Britain case: "There is nothing in the language of (15 U.S.C.A. § 646) to show that Congress intended antecedent (deed of trust liens securing Small Business loans) to rank behind any but the specific categories of interests set out therein, and the legislative history (does not give rise to any other) impression."

■ I feel therefore that under "Federal Law" the principle "first in time is first in right" is applicable here and that the entire debt secured by the deed of trust, the 10 per cent originally held by the Bank as well as the S.B.A.'s 90 per cent, is entitled to priority over the mechanics' and materialmen's liens.

*The Priority Statute—31 U.S.C.A. § 191.*

I have reached the foregoing conclusion without resort to the priority statute. But, if I should be in error in that conclusion, I still believe that the government's original 90 per cent interest would be entitled to priority by virtue of the statute, though this result, I think, could not be reached as to the Bank's original 10 per cent interest.

R.S. § 3466 (31 U.S.C.A. § 191) provides as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

■ It is well settled that "insolvent" as used in the statute means something more than that the total of the person's debts is in excess of the value of his property. He must have done one of the things referred to in the portion of the section following the semi-colon.

■ There is no doubt but that Foodco's debts exceed the value of its assets. And a judgment in favor of General Steel Tank Co., Inc. was recovered against Foodco in the County Court of Campbell County on November 29 1960 which appears in Campbell County Judgment Lien Book No. 14 at p. 1 and which remains unpaid and is therefore a lien upon Foodco's real estate. Va.Code, §§ 8–386 and 8–390. The failure to vacate or discharge this lien within thirty days was an act of bankruptcy even though no date for a sale thereunder has been set. 11 U.S.C.A. § 21, sub. a(3); 1 Remington on Bankruptcy (5th Ed.) § 146. Foodco is therefore "insolvent" within the meaning of 31 U.S.C.A. § 191.

This brings us to the question of whether the priority statute can be construed as giving the United States priority over all debts, including those secured by prior liens or merely over debts which otherwise would stand on a parity with the debt due the United States.

In Thelusson v. Smith, 2 Wheat., p. 396, 4 L.Ed. 271 the court said:

"The United States is to be first satisfied; but then it must be out of the debtor's estate. If, therefore, before the right of preference has accrued to the United States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a fi. fa., the property is divested out of the debtor, and cannot be made liable to the United States. A judgment gives to the judgment creditor a lien on the debtor's lands, and a preference over all subsequent judgment-creditors. But the act of congress defeats this preference, in favor of the United States, in the cases specified in the 65th section of the act of 1799."

From this one would infer that the priority of a prior mortgage and possibly other types of prior liens would be unaffected by the priority statute. But this is certainly not true as to some prior liens and may not be true as to any. As the Supreme Court said in reference to the Thelusson case in New York v. Maclay, 288 U.S. 290, at p. 293, 53 S.Ct. 323, at p. 324, 77 L.Ed. 754:

" * * * The ruling there was that the general lien of a judgment upon the lands of an insolvent debtor is subordinate to the preference established by the statute unless seizure by a marshal or some other equivalent act has made the lien specific and brought about a change of title or possession. Later cases have drawn a distinction between the liens of judgments and of mortgages. These last have been thought to have the effect of a conveyance, divesting the debtor of his title and leaving nothing but an equity to which a preference can attach. Conard v. Atlantic Insurance Co., 1 Pet. 386 [7 L.Ed. 189]; Brent v. Bank of Washington, 10 Pet. 596, 611, 612 [9 L.Ed. 547]; Savings [& Loan] Society v. Multnomah County, 169 U.S. 421, 428 [18 S.Ct. 392, 42 L.Ed. 803]. We do not now determine whether the holding in the mortgage cases is to be applied in jurisdictions where a mortgage upon real estate is a lien and nothing more (Trimm v. Marsh, 54 N.Y. 599), nor whether, if so applied, it imports a modification of the holding in the Thelusson case as to the lien of a judgment. Cf. United States v. Canal Bank, 3 Story 79, 81; United States v. Duncan, 4 McLean 607, 630 [12 Ill. 523]. A mortgage even though a lien, is one much more specific than a judgment or a tax, much closer to ownership. Conard v. Atlantic Insurance Co., supra, p. 443 [of 1 Pet.]; In re Boyd, 4 Sawyer 262, 264. Into these refinements and their consequences, there is no need to enter now. Enough for present purposes that the statutory preference must prevail against the lien of a tax not presently enforcible, but serving merely as a caveat of a more perfect lien to come."

The court has never found it necessary to resolve this question. As stated in U. S. v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, at p. 355, 65 S.Ct. 304, at p. 305, 89 L.Ed. 294:

"The words of § 3466 are broad and sweeping and, on their face, admit of no exception to the priority of claims of the United States. Thelusson v. Smith, 2 Wheat. 396, 425 [4 L.Ed. 271]; United States v. Texas, supra, [314 U.S.] 484 [62 S.Ct. 350, 86 L.Ed. 356]. But this Court in the past has recognized that certain exceptions could be read into this statute. The question has not been expressly decided, however, as to whether the priority of the

United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency or voluntary assignment. Conard v. Atlantic Insurance Co., 1 Pet. 386, 441, 444 [7 L.Ed. 189]; Brent v. Bank of Washington, 10 Pet. 596, 611, 612 [9 L.Ed. 547]; Spokane County v. United States, 279 U.S. 80, 95 [49 S.Ct. 321, 73 L.Ed. 621]; United States v. Knott, 298 U.S. 544, 551 [56 S.Ct. 902, 80 L.Ed. 1321]; New York v. Maclay, supra, [288 U.S.] 293, 294 [53 S.Ct. 323]; United States v. Texas, supra [314 U.S. at pages] 485, 486 [62 S.Ct. at pages 352, 353, 86 L.Ed. 356]. It is within this suggested exception that the landlord and the municipality seek to bring themselves. Once again, however, we do not reach a decision as to whether such an exception is permissible for we do not believe that the asserted liens of the landlord and the municipality were sufficiently specific and perfected on the date of the voluntary assignment to cast any serious doubt on the priority of the claim of the United States."

And again in U. S. v. Gilbert Associates (1953), 345 U.S. 361, at p. 365, 73 S.Ct. 701, at p. 704, 97 L.Ed. 1071, the court said:

"As is usual in cases like this, the Town asserts that its lien is a perfected and specific lien which is impliedly excepted from this statute. This Court has never actually held that there is such an exception. Once again, we find it unnecessary to meet this issue because the lien asserted here does not raise the question.

"In claims of this type, 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. Thelusson v. Smith, 2 Wheat. 396. Until such possession, it remains a general lien. There is no ground for the contention here that the Town had perfected its lien by reducing the property to possession. The record reveals no such action. The mere attachment of the Town's lien before the recording of the federal lien does not, contrary to the holding of the Supreme Court of New Hampshire, give the Town priority over the United States. The taxpayer had not been divested by the Town of either title or possession. The Town, therefore, had only a general, unperfected lien. United States v. Waddill Co., supra; Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370 [67 S.Ct. 340, 91 L.Ed. 348]. Where the lien of the Town and that of the Federal Government are both general, and the taxpayer is insolvent, § 3466 clearly awards priority to the United States. United States v. Texas, 314 U.S. 480, 488 [62 S.Ct. 350, 86 L.Ed. 356]."

However it is certain that the claim of the United States will prevail over the prior lien unless the prior lien is "specific and choate" (Mr. Justice Black dissenting in U. S. v. White Bear Brewing Co., Inc., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871). And numerous cases have held that mechanics' liens of themselves, when no steps have been taken to enforce them, are not specific and choate.

As said in Wolverine Insurance Co. v. Phillips, D.C., 165 F.Supp. 335, at p. 346:

"It is well settled that an unforeclosed mechanics' lien even though filed prior to a Government tax lien will be denied priority because it is not a perfected lien. * * *"

A case very similar to the case at bar is U. S. v. Latrobe Construction Co., 8 Cir., 246 F.2d 357. There the question arose as to priority between certain "miner's liens" for improvements erected upon certain premises in Arkansas and a Defense Production Act mortgage held by the government which was prior in time to the miner's liens. The court first considered whether Arkansas law

or federal law should prevail and held that the latter should prevail. It then discussed the transaction in the following terms at p. 363:

"In our present case the Government, under the statute authorizing the loan, had authority to prescribe the conditions of the loan. Pursuant to such authority the Government contracted for and obtained a prior and paramount lien upon Westmoreland's property, including such improvements as might be subsequently erected. As heretofore pointed out, the mortgages provide that the Government's lien is to be prior to the lien of any mechanics, materialmen, or labor or any other statutory lien. The Government's mortgages were executed and recorded before any labor or material was furnished by any of the appellees. Consequently, at the time appellees entered into contracts with Westmoreland for labor and materials, they had constructive notice of the terms of the Government's mortgages. This fact may not be of any particular significance in the determination of this case, but it is an answer to the equitable claims of the appellees. * * "

And then after discussing various Supreme Court cases the court said at p. 365:

"The decisions of the Supreme Court heretofore discussed appear to establish quite definitely that a federal priority or federal lien will prevail over any lien that is not specific and perfected. The Supreme Court has uniformly held that, as against federal priorities or liens, the question of whether the lien asserted against the Government claim is specific and perfected is always a federal question. In White Bear Brewing Co., supra, much more was done in the way of perfecting the labor and materialman's lien than was done in the present case. There the work had been completed, the lien had been filed, and the fore-closure had commenced before the Government tax lien was asserted. In our present case no materials had been delivered or work performed until after the Government's mortgages had been executed, delivered, and recorded."

And consequently the court concluded that the miner's liens were not sufficiently specific and perfected to be given priority over the government's mortgage.

And while not directly in point, because not involving mechanics' liens, the case of U. S. v. Waddill, Holland & Flinn, Inc., supra, heretofore quoted from, is persuasive. The case involved priority as between a claim of the United States and a landlord's lien for rent and city taxes. In that case the court also said at p. 357 of 323 U.S., at page 306 of 65 S.Ct.:

" * * * If the priority of the United States is ever to be displaced by a local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supersede a long-standing Congressional declaration of priority. Field v. United States, 9 Pet. 182, 201 [9 L.Ed. 94]; United States v. Oklahoma, 261 U.S. 253, 260 [43 S.Ct. 295, 67 L.Ed. 638]; Spokane County v. United States, supra [279 U.S.] 90 [49 S.Ct. 321, 73 L.Ed. 621].

"Tested by its legal effect under Virginia law, the landlord's lien in this instance appeared to serve 'merely as a caveat of a more perfect lien to come.' New York v. Maclay, supra [288 U.S.] 294 [53 S.Ct. 323, 77 L.Ed. 754]. As of the date of the voluntary assignment, it was neither specific nor perfected. It gave the landlord only a general power over unspecified property rather than an actual interest in a definitive portion or portions thereof.

890

"* * * The landlord may have been mistaken as to the rental date or as to payments previously made and the tenant may have been entitled to a set-off. * * *[2]

"Nor was the statutory lien perfected as a matter of actual fact, regardless of how complete it may have been as a matter of state law. The tenant was divested of neither title nor possession by the silent existence of the landlord's statutory lien on the date of the assignment. Only after the lien was actually asserted and an attachment or a distraint leveled, enabling the landlord to satisfy his claim out of the seized goods, could it be argued that such goods severed themselves from the general and free assets of the tenant from which the claims of the United States were entitled to priority of payment. Prior to that time, the lien operated to do no more than prevent the removal of goods from the premises by certain classes of persons, Va.Code § 5524, and give the landlord priority in distribution under state law provided that the goods remained on the premises. Such a potential, inchoate lien could not disturb the clear command of § 3466 of the Revised Statutes. Something more than a 'caveat of a more perfect lien to come' was necessary."

What was said in that case with respect to a landlord's lien for rent is for the most part equally true with respect to a mechanic's lien and the same result would seem to follow.

■ I conclude therefore that, even if I am in error as to the principle that general federal commercial law prevails in determining the priority here so that the matter must be determined by state law, still state law must and does recognize the Federal statute as in force in the state so that the debt to the United States would still be entitled to priority.

However if I should be in error as to the applicability of federal commercial law, so that the United States would have to rely on the statute for its priority, I do not think that that priority would extend to the portion of the debt acquired from the Bank after the institution of this proceeding.

In Nathanson v. National Labor Relations Board, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23, the National Labor Relations Board filed, as a claim in bankruptcy, an order it had previously entered against the bankrupt, directing it to pay certain employees back pay which they had lost on account of an unfair labor practice of the bankrupt. The court held that the Board had standing as a creditor to file the claim. But it held that the claim was not a claim of the United States entitled to priority under the Federal priority statute, saying at pp. 27 and 28 of 344 U.S., at p. 82 of 73 S.Ct.:

"We do not, however, agree with the lower court that this claim, enforceable by the Board, is a debt due to the United States within the meaning of R.S. § 3466, and therefore entitled to priority under § 64 (a) (5) of the Bankruptcy Act. It does not follow that because the Board is an agency of the United States, any debt owed it is a debt owing the United States within the meaning of R.S. § 3466. The priority granted by that statute was designed 'to secure an adequate revenue to sustain the public burthens and discharge the public debts.' See United States v. State Bank, 6 Pet. 29, 35 [8 L.Ed. 308]. There is no function here of assuring the public revenue. The beneficiaries of the claims are private persons as was the receiver in American Surety Co. v. Akron Savings Bank, 212 U.S. 557 [29 S.Ct. 686, 53 L.Ed. 651]."

2. In the case at bar it was shown at the hearing before the Master that the amount claimed by the plaintiff in its notice of lien was in fact slightly erroneous.

I can see no distinction from this situation in the case at bar. The government has agreed to pay the Bank 10 per cent of whatever it collects, so that the Bank will collect the same percentage of its original claim as the government will though the government was entitled to priority over the Bank. No reason has been given for the assignment of the Bank's claim to the United States and it seems pretty obvious that it was done to take advantage of the government's priority rights.

I do not believe that the government can buy up claims against a bankrupt estate and extend its priority to them. Some reliance is placed by the United States on Small Business Administration v. McClellan, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200, but a careful reading of that case indicates that it is not authority for the proposition for which it is cited. The issue there was not whether the government's priority could be extended to the bank's portion of that loan. It was whether, under the circumstances, the priority statute applied to give priority to the government's claim.

It follows therefore, that, if it were not for the applicability of general federal commercial law and the doctrine that the first in time is the first in right, the 10 per cent of the claim that was originally held by the Bank would not be entitled to priority.

### The Midstate Electrical Mechanic's Lien.

This lien was filed by Midstate on July 9 1960. The Special Master allowed it as a lien. But he disallowed the claim of Ready-Mix Concrete Co. "because the building was completed on April 9 1960" and the Ready-Mix lien, filed September 17 1960, was not filed within 60 days of such completion as required by Virginia Code, § 43–4. From the same facts, the Midstate Electrical lien must be and is hereby disallowed and Midstate becomes a general creditor.

### Real Estate Taxes.

The real estate taxes upon the property are delinquent for 1960 and 1961 and are a lien upon the property under Virginia law and, as above noted, those for 1962 have become a lien though not yet due. Under the express provisions of § 17 of the Small Business Act (15 U.S.C.A. § 646) quoted above these taxes are a prior lien to the deed of trust. And under Virginia law they are prior to all other claims. Va.Code of 1950, § 58–1023. Consequently these taxes should be paid prior to the debt due under the deed of trust, the debts due for mechanic's liens and the judgments.

### Fees and Costs.

The Special Master recommends that Mr. Joseph L. Lyle, Jr., an attorney of Lynchburg, be allowed a fee of $150.00 for examining the title to the property; that Mr. A. W. Mosby, Jr., a real estate appraiser, who appraised the property of Foodco and testified in the hearings on two separate occasions, be allowed a fee of $150.00; that a charge of Marvin Moseley, a plumber, in the sum of $14.00 for certain work done on the premises at the request of the parties be allowed and taxed as costs and that a bill of $321.05 of Mrs. Kathryn C. Stinnette for reportorial services be likewise so allowed and taxed. All such recommendations are approved and will be charged and taxed as costs.

The Special Master requests that his compensation be fixed by the court. He spent 81 hours on the work and has taken comprehensive depositions and prepared a very clear and, considering the intricacies of the matter, concise report which has been most helpful to the court. He will be allowed a fee of $1,000.00 for his services, to be taxed as costs.

An order will be entered accordingly.