## In the Matter of BARSER CONSTRUCTION CORPORATION, Debtor.

Bankruptcy No. B-75-83.
Civ. No. 80-0020.

United States District Court,
D. Puerto Rico.

Aug. 13, 1980.

Luis Fernández Ramírez, Cándido Monteserin, San Juan, P. R., for plaintiff.

Teodoro Peña García, Rafael Pieras, Hato Rey, P. R., for defendant.

### DECISION AND ORDER

TORRUELLA, District Judge.

This is an appeal from an Order entered by the Bankruptcy Court in Bankruptcy Case Number 75-83. We have jurisdiction over this matter pursuant to the provisions of 11 U.S.C. Sec. 47.[1]

The following is a summary of the relevant facts as they appear in the record on appeal. On March 17, 1975 Barser Construction Corporation (hereinafter "Barser") filed a petition under the provisions of Chapter XI of the Bankruptcy Act. Barser, at the time engaged in the business of

---

1. Although the Bankruptcy Act of 1898 has been superseded, we must apply to this case the law as it existed prior to the enactment of Pub.L. 95-598, *see* Pub.L. 95-598, sec. 403(a), 92 Stat. 2549 (1978); *In re Lloyd, Carr and Company*, 617 F.2d 882 p. 885 n.4 (1st Cir. 1980), and all citations are to the then-existing statutes.

construction of residential units, asked for and was granted authorization to operate as debtor in possession. On April 2, 1975 Barser requested authorization from the Bankruptcy Court to issue certificates of indebtedness (hereinafter "CIs") in order to be able to complete the construction of two projects it was engaged in, to wit: a multi-family rental project in Barrio San Antón, Carolina (hereinafter "San Antón Project") and a cost plus construction contract for San Martín Twin Towers, Inc. (hereinafter "San Martín Project"). The Bankruptcy Court, upon determining that the issuance of CIs was the most practicable and feasible way of obtaining the monies needed to complete said projects and continue operating, entered on April 22, 1975 an Order authorizing Barser to issue CIs to Mr. Claudio Ugarte. Those CIs, totalling $400,000.00, were given priority in payment over all existing obligations of Barser, except costs and expenses of administration of the bankruptcy proceeding.

The Chapter XI proceeding eventually became one of straight bankruptcy. On March 29, 1977 Barser's debtor designee filed a Motion stating that all of the monies provided by the CIs were used for the payment of labor and materials which in the event of default had to be provided by Travelers Indemnity Co. (hereinafter "Travelers"), indemnitor of both projects. The debtor designee requested in said Motion that the proceeds of retention of the San Antón and San Martín projects deposited with the Bankruptcy Court be used solely for paying the CIs.

On March 30, 1977 Mr. Claudio Ugarte requested as holder of CIs that said proceeds of retention be disbursed to him because his CIs have priority over all existing obligations of Barser. On April 14 and 26, 1977 Travelers filed Motions opposing both debtor designee's request as well as Mr. Ugarte's Motion, on the ground that it has a paramount and superior title to the retained proceeds. On December 28, 1978 the Bankruptcy Court entered an Order holding that Mr. Ugarte should be granted priority as holder of the above-mentioned CIs over all debts of Barser, except costs and ex-

penses of administration of the present case, to be paid on final distribution out of the bankrupt's estate which includes the proceeds of retention of the San Antón and San Martín projects that have been deposited or are in the process of being deposited in Court.

By Motion filed on January 12, 1979 Yaksh Builders, Inc. and Construcciones Werl, Inc., both individually and as a joint venture (hereinafter called both individually and collectively "Yaksh–Werl") stated they are holders of CIs issued by Barser in this case and requested to be paid out of the retained proceeds on a pro–rata basis with the rest of the holders of CIs issued by Barser in the present case. Yaksh–Werl also requested that the Order entered by the Bankruptcy Court on December 28, 1979 be amended to provide the above–stated pro–rata payment to Yaksh–Werl.

On January 12, 1979 Travelers filed a Motion for reconsideration of the Bankruptcy Court's Order of December 28, 1979. Said Motion was denied by Order dated November 1, 1979 and Travelers appealed herein. Yaksh–Werl also appealed from said Order to the extent it denies Yaksh–Werl's Motion of January 12, 1979 requesting pro–rata payment out of the retained proceedings.

Yaksh–Werl's appeal is DISMISSED since it refers to a matter upon which the Bankruptcy Court has not yet passed.

The CIs issued by Barser to Mr. Ugarte were authorized by the Bankruptcy Court under the provisions of Section 344 of the Bankruptcy Act, 11 U.S.C. Sec. 744, which provides:

"During the pendency of a proceeding for an arrangement, or after the confirmation of the arrangement where the court has retained jurisdiction, the court may upon cause shown authorize the receiver or trustee, or the debtor in possession, to issue certificates of indebtedness for cash, property, or other consideration approved by the court, upon such terms and conditions and with such security and priority in payment over existing obliga-

tions as in the particular case may be equitable."

It is beyond question that the statute grants to the Bankruptcy Court the power to authorize a debtor–in–possession to issue CIs. *In re Scandia Builders, Inc.*, 446 F.Supp. 115 (N.D.Ga., 1978); 8 Colliers on Bankruptcy, Sec. 344 Subsec. 640[1] (14th ed. 1978 and 1979 Supp.); 9 Remington on Bankruptcy Sec. 3605 (6th ed. 1955 and 1978 Supp.). The issue before us is whether the Bankruptcy Court may authorize those CIs as a first lien over secured obligations.

"The problem is really one of security rather than of priority in payment. More priority in payment does not disturb security held by a creditor, but permits the certificates of indebtedness to be paid out of free assets before such can be applied to the payment of general claims, or, if so provided, before those assets can be applied to the payment of even administration claims. As to those free assets, the secured creditor has no standing except to the extent he is unsecured, and to that extent he has no better standing than any unsecured creditor to oppose the granting of priority. The real problems are whether the power can be conferred to secure certificates of indebtedness by creating a security interest in property to take precedence over an already existing security interest in that property and, if it can be, whether s344 does confer that power." Colliers, supra, Sec. 344 Subsec. 640[7.2].

Although the question has received only sparse discussion, see: *In re Scandia Builders, Inc.*, supra, at 117, the prevailing view is that the Bankruptcy Court's power to subordinate preexisting liens to CIs issued under Section 344 in a Chapter XI case is limited to those situations where said subordination is essential for preserving the encumbered property. *In re Scandia Builders, Inc.*, supra, at 117–119; *Colliers*, supra, Sec. 344 Subsec. 640[7.2].

■ Section 344 does not authorize the issuance of first lien CIs over secured assets for the purposes of operating or increasing the value of said secured assets; such first lien CIs may only be authorized when they are necessary for avoiding the destruction of the assets, that is, when they are essential for maintaining the status quo. See *In re Scandia Builders, Inc.*, supra; *Colliers*, supra.

In *In re Scandia Builders, Inc.*, supra, the debtor, a corporation engaged in the business of developing, building and selling single–family dwellings, filed a Chapter XI petition. Debtor's principal assets consisted of 11 houses which were 80 to 95 percent completed and 29 developed residential lots. Said assets were subject to several liens. The 11 incomplete houses were unsold and had been unoccupied for about two years. The houses were water–proof, had been locked, and were inspected regularly. Nevertheless, they were attacked by incidents of vandalism and suffered from depreciation. The Bankruptcy Court endorsed debtor's position that the completion of the houses might allow it to pay off the secured creditors and still have enough assets to work out a payment plan for its unsecured creditors and thereby remain in business. Therefore, the Bankruptcy Court authorized the issuance of first lien CIs to secure the loan needed to complete the houses. The District Court reversed and remanded, stating *inter alia* :

"[This] Court agrees with those cases which have held that certificates of indebtedness may subordinate preexisting liens only when it is necessary to preserve the debtor's assets. See, e. g., *In the Matter of Habersham–on–Lanier, Inc.*, B77–13G (N.D.Ga., Dec. 21, 1977); *In Re Security Investment Properties, Inc.*, B74–2506A (N.D.Ga., February 18, 1975). Indeed, the bankruptcy court has a responsibility to protect the debtor and unsecured creditors over whom it has jurisdiction as well as the secured creditors who are prevented from foreclosure pursuant to section 314, 11 U.S.C. s714.

. . . . .

"[C]ertificates of indebtedness which are issued for the preservation of the asset are the exception rather than the rule. The debtor has the burden to show:

first, that the cash, goods or services which the debtor hopes to purchase with the first lien certificates are essential to the preservation of the asset. It is not enough that the added value would be helpful or useful. Therefore, an inquiry should be made into whether the essential purpose of preserving the status quo can be accomplished with substantially less impact on the preexisting lien holders. Moreover, the central concern should be with preserving the status quo to protect the parties from catastrophic loss. Thus, first lien certificates will most often be issued for purposes in the nature of paying taxes, purchasing insurance or hiring security guards. See 8 Collier on Bankruptcy 6.40[7.2], at 975. Second, the debtor should show that certificates are not saleable without being made a first lien. See *In re Prima Co.*, 88 F.2d 785, 790 (7th Cir., 1937). This requirement was applied to old section 77B which specifically authorized first lien certificates. It should be applied to Chapter XI proceedings a fortiori." *In re Scandia Builders, Inc.*, supra, at 118–119.

The *Scandia* Court rejected the arguments that the existing depreciation, inflation and vandalism justified the issuance therein of first lien CIs The Court stated *in fine* :

"The bankruptcy court found that it was necessary to complete and sell debtor's houses in order to stem the decreasing value due to depreciation, inflation, and vandalism. There is nothing in the record to indicate that depreciation and inflation are affecting debtor's property in any extraordinary or unusual manner. As was stated earlier, first lien certificates should not be issued to combat such routine economic ills. While the bankruptcy court should be concerned with preventing vandalism to debtor's property, there is no evidence to support the assumption that completion of the houses is the least burdensome means to effectuate that end. The debtor made no show-

ing that precautions such as security guards or insurance were unavailable or more costly. Moreover, while there was evidence that no one would complete the houses without a first lien certificate, there was no showing by the debtor that more conventional means of security could be obtained only by resorting to first lien certificates.

"In the case at bar, the indications are clear that the debtor sought to do more than protect the current value of the asset. He sought to increase its value to benefit his arrangement. Even if this Court were to agree that completion of the houses may be in the best interest of the debtor and the unsecured creditors, Chapter XI does not allow the debtor's interest to interfere with the rights of the secured party. Such interference, by way of first lien certificates, should be allowed in rare and unusual circumstances when relatively small expenditures are necessary to preserve the status quo." *In re Scandia Builders, Inc.*, supra, at 119–120.

▮ In the case at bar the Bankruptcy Court authorized the issuance of CIs to Mr. Ugarte for the purposes of enabling Barser to complete the San Antón and San Martín projects and continue operating. There is no evidence in the record to indicate that such purposes were essential for the preservation of the assets. Indeed, we have already seen how similar arguments were rejected by the *Scandia* Court. Therefore, regardless of how desirable or convenient the completion of the two projects by Barser and its continuation in operations might have been, it did not warrant the extreme remedy of authorizing first lien CIs.

In view of the foregoing, we hold that the CIs issued to Mr. Ugarte do not constitute first lien CIs.[2] The rights, if any, of Travelers over the proceeds of retention is a question upon which we do not pass since it should be considered and decided first by the Bankruptcy Court.

---

**2.** The priority granted by the Bankruptcy Court to Mr. Ugarte's CIs over unsecured obligations is a question that is not presently before us.

We do note, however, that there appears to be no doubt as to the validity of such a priority. See *Colliers*, supra, Sec. 344 Subsec. 6.40[7.1].

The Bankruptcy Court's Orders of December 28, 1978 and November 1, 1979 are VACATED and the case is REMANDED for further proceedings consistent with this Decision and Order.

IT IS SO ORDERED.