The **LIBERAL MARKET, INC.** by the Official Creditors' Committee, Plaintiff,

v.

**MALONE & HYDE, INC.** et al., Defendants.

In the Matter of The **LIBERAL MARKET, INC.,** Debtor.

Bankruptcy No. 3–81–00305.
Adv. Nos. 3–81–0379, 3–81–0401.

United States Bankruptcy Court, S. D. Ohio, W. D.

Oct. 7, 1981.

Jay A. Rosenberg, Cincinnati, Ohio, for Official Creditors' Committee.

Bamberger & Feibleman, Indianapolis, Ind., for Liberal Market, Inc.

Peter Donahue, Dayton, Ohio, for debtor.

R. P. Cunningham, Columbus, Ohio, for plaintiff/defendant.

H. Andrew Sonneborn, Indianapolis, Ind., John Cloud, Dayton, Ohio, for Schear Group.

## MEMORANDUM DECISION ON MOTIONS TO DISMISS

CHARLES A. ANDERSON, Bankruptcy Judge.

### FACTS

The Liberal Market, Inc. filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on 4 February 1981.

Upon "motion" filed on 2 March 1981 by Malone & Hyde, Inc., raising the question of adequate protection, and upon consent of the Debtor-in-Possession, the operation of the business was ordered terminated by order entered 3 March 1981. Since closing the business the case administration has involved the sale and disposition of assets, primarily supermarket locations in several areas of different counties in Ohio and numerous adversarial proceedings pertaining thereto.

On 3 March 1981 an application was filed by several labor unions and allied interests as creditors, seeking the appointment of an "operating Trustee" and "for such other and further relief as this Court may seem just and proper." In pertinent part, it was alleged that the Debtor-in-Possession was continuing payments on unoccupied leased premises, "apparently owned by one of the principal shareholders of the Debtor, and . . . has been selling inventory for as little as one-half its actual value without permission of the Court."

Notice of the hearing upon the application was duly served upon all creditors and numerous other interested parties, including the attorneys of record for Malone & Hyde, Inc., The Liberal Market, Inc., its parent corporation, and allied corporate entities.

After hearings on this application, (later joined by the request of the Creditors' Committee) on 9 March 1981 and on 16 March 1981, the court entered a decision and order on 20 March 1981 declining to appoint a trustee, but further finding and concluding as follows:

"The court has a tool available under the terms of 11 U.S.C. § 1106(b), without regard to the equity jurisdiction of a bankruptcy court, to deal with the interests of the various parties now involved. We direct attention to the authority in this statute authorizing an examiner to perform 'any other duties of the trustee that the court orders the debtor-in-possession not to perform'. Hence, the court may give an examiner additional duties not specifically enumerated as circumstances such as involved *instanter* warrant. See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 404. Obviously, operation of the business of Debtor is a function of a trustee conformably to 11 U.S.C. § 1108, which business operation does not even require a court order.

Based upon the foregoing summary analysis, it is

*ORDERED, ADJUDGED AND DE-CREED* that Ira W. Rubin should be and is hereby appointed as Examiner for and with the following purposes and duties, to-wit:

(1) Except to the extent that the court may order otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the Debtor, the operation of the Debtor's business and the desirability of the continuance of the business, and any other matter relevant to the case or to the formulation of a plan;

(2) As soon as practicable, file a statement of such investigation, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to any cause of action available to the estate;

(3) Assume the authority formerly vested in the Debtor-in-Possession to supervise and control the operation of the business, or any part thereof deemed advisable, upon approval of the Creditors' Committee, and as soon as proper financing has been assured.

The Examiner may, at his discretion, draw from the Debtor-in-Possession current management personnel for the implementation of daily business activities.

(4) Recommend as soon as possible whether there should be a conversion of the case to a case under Chapter 7.

*ORDERED, ADJUDGED AND DE-CREED,* that all of the other statutory rights of a debtor-in-possession, including title and possession of debtor's assets, and the exclusive right to file a Plan of reorganization, shall remain intact and in full force and effect until further order herein.

*ORDERED,* that the chief executive officer, or nominee, of United Food and Commercial Workers Union, Local 1552, and also, of Amalgamated Food and Allied Workers, District Union No. 430, are hereby added as members of the Creditors' Committee heretofore appointed pursuant to 11 U.S.C. § 1102, unless or until a special additional committee of creditors be appointed which includes such labor union executives."

On 15 May 1981 the Creditors' Committee and Ira Rubin, the Examiner appointed by the court, filed an application "for the joint examination of witnesses and for any other and further relief as to this Court may seem just and proper...." The application recites, "based upon the information acquired by applicants to date, it appears clear that serious questions exist with respect to the relationship and transactions between and among the Debtor and the entities or persons from whom the Debtor leased real property, the principals of which were the same or closely related. There are also serious questions with respect to the transactions between the Debtor and certain of its secured creditors, including, *inter*

*alia,* Malone & Hyde, Inc. and Scott Lad Foods, Inc." Further, "Applicants believe, and the Debtor agrees, that the best interests of the estate would be served if applicants, rather than the Debtor, jointly pursued any claims the Debtor and Debtor-in-Possession might have against the persons or entities referred to above, as well as any other claims the Debtor or Debtor-in-Possession may have."

The court further ordered, "that pursuant to Bankruptcy Code §§ 1103(c)(5) and 1106(b), respectively, the Official Creditors' Committee and the U. S. Examiner shall be authorized to jointly commence and prosecute, in the name and on behalf of the Debtor or Debtor-in-Possession, any action that the Debtor or Debtor-in-Possession would be authorized to commence and prosecute in its own right, including, but not necessarily limited to actions to recover preferential transfers, fraudulent transfers, transfers made after the filing of the petition herein, or to otherwise recover any property of the Debtor or Debtor-in-Possession as they, in their sole discretion, elect to commence and prosecute. . . ."

Said application of 15 May 1981 was granted by order entered 26 May 1981, no notice of hearing required, both the Creditors' Committee and the Examiner having been previously duly appointed.

The instant litigation is a combination of two adversary proceedings, Numbers 81–0379 and 81–0401, which were consolidated for the purposes of discovery and trial because of common questions of both fact and law, by order entered 4 August 1981 conformably to Bankruptcy Rule 742(a) and Federal Rule of Civil Procedure 42(a).

Under Adv. No. 81–0379, Malone & Hyde, Inc. instituted a suit on 15 June 1981 against The Liberal Market, Incorporated, seeking a turnover of funds held by defendant in the amount of $592,135.00 and any other funds derived from the sale of collateral covered by the security interest of plaintiff, or alternative relief (hereinafter the "Malone & Hyde, Inc. Suit"). On 9 July 1981 the Debtor filed its answer, admitting the security interest but denying "for want

of knowledge" the monetary amounts pleaded.

On 20 July 1981 upon motion of the Creditors' Committee (pursuant to the aforementioned order entered on 26 May 1981) the Answer filed by the Debtor was stricken by court order and an Answer in behalf of the Debtor-in-Possession filed by the Creditors' Committee, admitting sales of inventory but placing at issue the validity of the security interest and further alleging, *inter alia,* that indispensable parties, Malone & Hyde Financial Corp., Schear Group, Inc., Herbert Schear, Harry Schear, Hyman Schear and Eugene Schear, have not been joined.

Under Adv. No. 81–0401, The Liberal Market, Inc., by the Official Creditors' Committee, instituted a suit on 15 June 1981 against Malone & Hyde, Inc., Malone & Hyde Financial Corp., Schear Group, Inc., Herbert Schear, Harry Schear, Hyman Schear, and Eugene Schear seeking the invalidation of an alleged security interest or equitable subordination, for compensatory damages and punitive damages in the amount of $5,000,000.00 for various causes of action, including a violation of the "Federal Anti-Trust Laws" (hereinafter "The Liberal Market, Inc. suit").

Conformably to the previous court orders mentioned, the Examiner has now by order joined in both suits in behalf of the Debtor, The Liberal Market, Inc.

## OPINION

These two adversarial proceedings, even though combined for trial and disposition, are now before the Court upon separate motions to dismiss directed to various alleged claims and parties.

One motion *sub judice* was filed in the Liberal Market, Inc. suit on 23 July 1981 in behalf of Defendants, Schear Group, Inc., Herbert Schear, Harry Schear, Hyman Schear and Eugene Schear (hereinafter the "Schear motion") on the ground that the amended complaint fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure because it fails to state a claim

upon which relief can be granted, and further seeks dismissal of certain other alleged claims under Rule 12(b)(6), supported by a brief filed therewith. Plaintiff filed a brief in opposition to this motion to dismiss on 24 August 1981. A reply brief was filed by Defendants on 31 August 1981.

Another motion *sub judice* was filed in The Liberal Market, Inc., suit on 3 September 1981 in behalf of Defendants Malone & Hyde, Inc. and Malone & Hyde Financial Corp. (hereinafter "Malone & Hyde motion"), for an order dismissing Counts I through XV of Plaintiff's Amended Complaint on the grounds that (a) the Official Creditors' Committee lacks standing to assert the claims alleged, and (b) the allegations are insufficient to state a claim for relief under the federal antitrust laws, supported by a brief filed therewith. Plaintiff filed a brief in opposition to this Motion to Dismiss on 15 September 1981.

Both motions are directed to the amended complaint filed by Plaintiff in The Liberal Market, Inc. suit on 15 July 1981, composed of 78 separately itemized and numbered allegations and fifteen separate claims based upon these allegations. All of the allegations pertain to an intricate course of business transactions by The Liberal Market, Inc. among and concerning interrelationships with Malone & Hyde, Inc. (M&H) and Malone & Hyde Financial Corp. (MHF), whereby these parties obtained from Liberal a requirements contract, promissory notes, security interests in practically all of Liberal's assets, a performance agreement and a right of first refusal to take over all of Liberal's supermarkets.

Five of the counts pleaded allege violations of the federal antitrust laws, including § 1 of the Sherman Act, § 3 of the Clayton Act, and § 2(a) of the Robinson-Patman Act. The other ten counts include a breach of contract claim and nine claims of various illegal preferences and voidable transfers (often termed "fraudulent" transfers).

Certain of the 78 specifications alleged involvement by the Schear defendants in these transactions, as follows:

Schear Group, Inc. owns all of the voting stock of Liberal. The individual Schear's are officers and directors of Liberal. Certain of the specifications allege that the promissory notes were guaranteed by Schear Group, the Schear brothers and affiliated corporations under the same ownership.

The gravamen of the several allegations concerning these business transactions involving the defendants in the same alleged factual pattern is the basis for a complaint and prayers for relief seeking not only to invalidate security interests, or an alternative equitable subordination of the M&H interests, and monetary damages; but, also, relief sounding in statutory and traditional bankruptcy law (preferences and voidable transfers designed to defeat creditors' rights) and monetary damages sounding in a contract, combination and conspiracy, and an illegal tying arrangement, in restraint of trade, not generic to the Bankruptcy Code, all stemming from the same transactions.

Every alleged claim would not lead, if proved, to a joint judgment against each and every named defendant. This Court finds, however, a proper joinder of claims and remedies conformably to Rule 18 of the Rules of Civil Procedure. We further find that the allegations warrant and require a joinder of all named defendants conformably to both Rule 19(a) as to necessary parties and Rule 20(a) for permissive joinder in respect to joint, several, and alternative relief arising out of the same transaction or series of transactions or occurrences and facts common to all defendants.

–A–

■ Turning to the specific issues raised by the Malone & Hyde Motion to Dismiss, the court concurs absolutely with the axiom and truism argued that creditors of a corporation do not *ipso facto* have standing to bring an action for antitrust violations as injured parties within the meaning of 15 U.S.C. § 15, in a non-bankruptcy context. The Plaintiff corporation does not contest this axiom. It is a companion truism that individual creditors as such would not be *sui*

*juris* to circumvent fiduciary relationships (trustee, debtor-in-possession, examiner, official creditors' committee, etc.) established by statute and court orders.

The case precedents and consensus of the opposing parties in this regard cited in the motion, therefore, need not be labored. The quantum leap from such case precedents, however, to obvious *non sequiturs* affords the basis now for summary resolution, in light of the facts *instanter.*

■ The dispositive facts overlooked by movants are the prior orders of the court appointing the Official Creditors' Committee and the Examiner, and specifically designating to these fiduciaries the responsibility of pursuing corporate rights and remedies of the debtor-in-possession, because the original fiduciary (debtor-in-possession) was subject to potential conflicts of interest arising from interrelationships among the debtor corporation and family interests and affiliated corporations (so vividly now illustrated by the allegations in the complaint before the court).

Even a casual perusal of the complaint reveals that the complaint and claims are being pursued by the Liberal Markets, Inc. In fact, the very caption of the complaint is entitled "The Liberal Market, Inc. by the Official Creditors' Committee" (now joined by the court-appointed Examiner).

Without again reiterating the purposes and rationale of the previous decisions of this Court giving rise to delegation of this authority to the Committee and Examiner, and the goal of limiting the oppressive drain on the estate by the appointment of a trustee as duplicative fiduciary (and necessary and proper expenses arising therefrom), we draw further attention to both the inherent powers of the bankruptcy courts and to the occasional necessity for sound administration of bankruptcy cases to resort to the provisions of 11 U.S.C. § 105(a) by issuing "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Such additional authority is not now involved, nevertheless, because of the authority long since invested by the court orders to the Official

Creditors' Committee and the Examiner. See *In the Matter of Liberal Market, Inc., 11 B.R. 742 (Bkrtcy.).*

Furthermore, as pointed out in the decision and order entered by this Court on 24 August 1981 in *Official Creditors' Committee v. The Liberal Market, Inc., 13 B.R. 748 (Bkrtcy.),* "until a trustee is appointed under Chapter 7, a serious question is posed as to the rights and powers conferred on a Chapter 11 trustee under 11 U.S.C. § 544." We again note that the enumerated powers of a trustee appointed pursuant to 11 U.S.C. § 1106 very carefully withholds those provided by 11 U.S.C. § 704(1) ("to collect and reduce to money the property of the estate for which such trustee serves . . . .)"

In the Malone & Hyde Motion, dismissal of the complaint is also urged because "there is no sufficient nexus shown between Defendants' Conduct and Interstate Commerce." It is urged that "the challenged activity must occur *in* the flow of interstate commerce, or *substantially affect* interstate commerce."

■ In paragraph 16 of the complaint a tying arrangement in violation of 15 U.S.C. § 14 and in paragraph 30, restraints in violation of 15 U.S.C. § 13(a) are clearly and adequately alleged. Whether the transactions pleaded substantially affect interstate commerce is a question of fact to be litigated. Where the volume of business affected is not insignificant and the effect is to foreclose competition from a substantial market, direct proof of the economic effect of the contract on interstate commerce may be unnecessary. *International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20.* If a substantial volume of interstate commerce in the tied products is restrained, the tying arrangement violates 15 U.S.C. § 14, and the requisite potential lessening of competition may be inferred. *Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277.*

In short, the creditors are not the party plaintiff and there is no allegation of injury to creditors to raise any question of stand-

ing. If the position of defendants were pursued further to the ridiculous, quite substantial claims sounding in antitrust could never be asserted in a corporate reorganization case even though conflicts of interest, as alleged herein, did not exist.

In considering a motion to dismiss, the allegations should be construed in the light most favorable to the plaintiff, as the Supreme Court held in *Conley v. Gibson, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80.* In considering a motion to dismiss a complaint under Rule 12(b)(6), the well-pleaded material allegations of the complaint are taken as true, and the complaint is liberally construed in favor of the plaintiff.

This Court concurs with the case precedents cited by the plaintiff that summary disposition of antitrust cases is disfavored, *Cliff Food Stores, Inc. v. Kroger, Inc., 417 F.2d 203 (5th Cir. 1969);* and that whether the interstate commerce requirement is present is a question of fact. *United States v. Flom, 558 F.2d 1179, 1184 (5th Cir. 1977).*

–B–

The Schear motion to a major degree raises similar issues as the Malone & Hyde motion, excepting the question of standing. The question of the adequacy of the allegations of fraud, under Rule 9(b) of the Federal Rules of Court Procedure, is further pursued, as such allegations pertain to the Schear defendants particularly.

The same principles as mentioned herein previously are applicable and need not be repeated.

█ The court is constrained to concur with the Schear motion, to the extent that the amended complaint should be made more definite and certain as to the particular counts and damages sought against these specific defendants, so that responsive pleadings can adequately be framed.

In all other respects, the allegations of the amended claim are sufficient to withstand the request for dismissal before trial of the factual issues.

Extensive analysis of Rule 9(b) has been presented by the Schear motion in urging that "fraud" has not been pleaded sufficiently to satisfy the requirement that, "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be covered generally."

This Rule 9(b) exception and refinement of the general directions for pleading in Rule 8(a) and (e)(1) codifies a requirement in pleading fraud or mistake which was well established at common law. See *2A Moore's Federal Practice ¶ 9.03.* It must be remembered, nevertheless, that the common law action for fraud and deceit, as stated by the Supreme Court, required elements of misrepresentation of a material fact, which is false, not actually believed by the defendant, and that such misrepresentation was believed and acted upon by the complaint. See *Southern Dev. Co. v. Silva (1888) 125 U.S. 247, 8 S.Ct. 881, 31 L.Ed. 678.* Prepetition fraudulent conveyances and voidable preference causes of action, such as pleaded in Counts VII through XI, XIV and XV, sound in statutory bankruptcy law but not common law fraud.

Fraudulent conveyances under former Section 67 of the Bankruptcy Act, derived from the Statute of Fraudulent Conveyances of 13 Elizabeth, and from the laws of the situs of the property, now enacted into 11 U.S.C. § 548, do not involve the *mens rea* of the common law fraud included in Rule 9. For instance, Section 548(a)(2)(A) focuses on whether the debtor received "a reasonably equivalent value," and makes no reference to the transferee's good faith or actual purpose.

As cited by the plaintiff corporation, "The proper balance between the simplicity in Rule 8 and the particularity required by Rule 9 is demonstrated by the illustrative fraud claim act set out in official Form 13, which is expressly declared to be sufficient pleading by Rule 84. According to the Form, it is proper merely to allege that Plaintiff seeks to

have a conveyance set aside on the ground that "Defendant C.D. on or about . . . conveyed all his property, real and personal to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to." *"Wright & Miller, 5 Federal Practice and Procedure, Section 1298 at 406–408."*

The question now is whether the pleading is sufficiently detailed to give the opposing parties adequate notice to prepare their responsive pleadings. "The courts have recognized that the function of pleadings under the Federal Rules is to give *fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought, so that it may be assigned to the proper form of trial." *2A Moore's Federal Practice ¶ 8.13 at page 8–103.* See also Justice Black's opinion in *Conley v. Gibson (1957) 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.* We find the plaintiff's pleadings to be more than adequate.

*ORDERED, ADJUDGED AND DECREED,* that Plaintiff has standing to prosecute the instant litigation as court fiduciary in behalf of the debtor corporation and the motion to dismiss in this respect should be, and is hereby, denied;

*ORDERED,* that the motions as directed to the sufficiency of the allegations of the various claims, shall be deferred for determination upon the evidence at the trial, conformably to Rule 12(d);

*ORDERED,* that the complaint be amended to be more definite and certain as to the particular claims and damages sought against the Schear defendants, so that responsive pleadings can be adequately framed and pleaded without the necessity of alternative pleadings.