**In re CALVARY TEMPLE EVANGELISTIC ASSOCIATION, a Minnesota religious corporation, Debtor.**

**Bankruptcy No. 4–84–743.**

United States Bankruptcy Court,
D. Minnesota.

Dec. 31, 1984.

Larry B. Ricke, of Wagner, Johnston & Falconer, Ltd., Minneapolis, Minn., for unsecured creditors' committee.

Jerrold F. Bergfalk, and Norman Newhall, of Lindquist & Vennum, Minneapolis, Minn., for debtor.

Steven J. Kluz, of Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for Minnegasco.

Douglas J. Carney, Minneapolis, Minn., for Recreational Investors.

George E. Nelson, Hopkins, Minn., for Midwest Elevator.

Clark F. Isaacs of Clark F. Isaacs & Associates, P.A., St. Paul, Minn., for Krogert & Anderson.

Richard G. Pepin, Jr., Minneapolis, Minn., for Naegele.

## ORDER DISMISSING THE UNSECURED CREDITORS' COMMITTEE'S MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS

MARGARET A. MAHONEY, Bankruptcy Judge.

The Unsecured Creditors' Committee brought a motion for appointment of a trustee and for authority to sell property free and clear of liens in this case. The motions were first on for hearing on December 19, 1984 before this Court. The motions were noticed to all creditors and contained a description of two purchase offers relating to the real property of the Debtor's estate, which purchase offers were to be considered at the time the motions were heard. Testimony was taken on December 19, 1984. At the conclusion of that afternoon of hearings, the testimony of all parties' witnesses was not concluded. It was ordered by the Court, after oral arguments and statements by counsel, time being of the essence for some purchase offers, that the motion for appointment of a trustee be continued indefinitely and that further testimony on authority of the Creditors' Committee to sell property free and clear of liens continue on December 26, 1984. The Court also ordered that any offers previously not submitted to the Debtor in writing be so submitted by December 21, 1984, at 5:00 p.m., for consideration also on December 26, 1984. The Unsecured Creditors' Committee again sent notice to all creditors of the continued hearing and the requirement that written purchase offers be provided to the Debtor by December 21, 1984.

Between December 19 and December 26, 1984, the Debtor submitted objections to the Unsecured Creditors' Committee's motions. One other potential purchaser, Mr.

James A. Vander Griend, requested of the Court a 30-day extension of time in which to submit a purchase offer.

The Debtor objects to the Unsecured Creditors' Committee's motion for authority to sell property free and clear of liens on three grounds: (1) the Unsecured Creditors' Committee does not have the power under the Bankruptcy Code to request that the Court issue an Order to sell property free and clear of liens and/or cannot be given authority to sell said property free and clear of liens; (2) the Court does not have the authority to make such an Order empowering the Creditors' Committee to sell property or to sua sponte so order based on its equitable powers; and (3) the notice given to creditors was not sufficient to satisfy Bankruptcy Rules 6004 and 2002 in regard to sale.

## DISCUSSION

### I.

The first issue raised by the Debtor is the standing of the Unsecured Creditors' Committee to bring a motion for authority to sell property free and clear of liens under 11 U.S.C. § 363. The statutory authority for such a motion is 11 U.S.C. § 1103(c)(5) and/or § 1109(b).[1]

The policy behind allowing creditors' committees to raise issues in administration of Chapter 11 estates is plain. The Bankruptcy Code was drafted with the intent of allowing the creditors' committee to protect the rights of creditors, especially where the debtor's action or lack thereof infringes on the creditors' rights.[2]

The cases construing how broad the powers of a creditors' committee are under § 1103 and § 1109 have allowed a committee to bring adversary proceedings in bankruptcy cases[3] and to bring a motion to reject a debtor's union contract.[4] No cases have allowed a creditors' committee to proceed with a sale of property free and clear of liens under 11 U.S.C. § 363.

In the event a Court is considering allowing a creditors' committee to maintain an action on behalf of the Chapter 11 estate, the Court has usually required prior actions by the committee. In *Toledo Equipment, infra,* the Court required that the committee first apply for leave to maintain the action. The motion for leave to maintain the action must show:

"1) that the creditor's committee has made a request of the debtor-in-possession regarding the initiation or prosecution of an action which will benefit the estate,

2) that the request has been refused,

---

1. 11 U.S.C. § 1103(c) states (in relevant part):

    § 1103 Powers and duties of committees.

    *    *    *    *    *    *

    (c) A committee appointed under section 1102 of this title may—

    *    *    *    *    *    *

    (5) perform such other services as are in the interest of those represented.

    11 U.S.C. § 1109(b) states:

    § 1109 Right to be heard.

    *    *    *    *    *    *

    (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter.

2. See comments in *Matter of Marin Oil, Inc.,* 689 F.2d 445 (3rd Cir.1982) at p. 455.

3. See for example *In the Matter of Monsour Medical Center,* 5 B.R. 715 (Bktcy.E.D.Pa.1980)

(creditors' committee brings suit on preference action); *In the Matter of Joyanna Holitogs, Inc.,* 21 B.R. 323 (Bktcy.S.D.N.Y.1982) (creditors' committee allowed to bring preference action); *In re Evergreen Valley Resort, Inc.,* 27 B.R. 75 (Bktcy.Maine 1983) (creditors' committee allowed to bring a declaratory judgment action re determination of the ownership of property and validity of claims); *Liberal Market, Inc. v. Malone & Hyde, Inc.,* 14 B.R. 685 (Bktcy.S.D.Ohio 1981) (creditors' committee allowed to bring action to recover property); *In re Jermoo's,* 38 B.R. 197 (Bktcy.W.D.Wis.1984) (creditors' committee allowed to bring action re fraudulent transfers); *In re Jones,* 37 B.R. 969 (Bktcy.N.D. Texas 1984) (creditors' committee allowed to bring preference action); *In re Toledo Equipment Co., Inc.,* 35 B.R. 315 (Bktcy.N.D.Ohio 1983) (creditors' committee allowed to bring preference action).

4. *In re Parrot Packing Company, Inc.,* 42 B.R. 323, 9 C.B.C.2d 877 (D.C.N.E.Ind.1983).

3) a *prima facia* (sic) demonstration that a colorable claim exists, which, if successful, would benefit the estate, and,

4) the creditor's committee's grounds for contending that the debtor-in-possession's inactivity on the claim is unjustifiable or abusive of their discretion" at 35 B.R. 320.

In this case, I do not know if the creditors' committee might be able to prove the existence of the above factors. However, I find that the right of a creditors' committee to seek authority to act under § 1109(b), § 1103(c)(5) or any other section should not be extended to apply in this case in any event. The policy considerations which make creditors' committee actions in adversary proceedings appropriate are not present here.

The majority of the cases on this issue have allowed the creditors' committee to act in adversary proceedings involving lien avoidance, fraudulent transfer, and preference actions. In these situations, a debtor may be reluctant to proceed with adversary proceedings against certain defendants who may be major shareholders of the debtor or major creditors with whom the debtor is attempting to negotiate terms for a successful reorganization plan. The debtor's reluctance to bring the suit and the debtor's probable lack of cooperation or, at least, enthusiasm in discovery relating to the adversary proceeding is not insurmountable however. The discovery process allows the creditors' committee to obtain needed information. The acts or transactions upon which the cause of action is based are usually completed ones not involving any ongoing activity by the debtor.

█ The one case which holds that the power of a creditors' committee to act in place of a debtor extends further than the above mentioned types of adversary proceedings in *In re Parrott Packing Company, Inc.*, 42 B.R. 323, 9 C.B.C.2d 877 (N.E.Ind.1983). In that case, a creditors' committee was allowed to bring a motion to reject a union contract under 11 U.S.C. § 365. The District Court found that the authority for the creditors' committee to bring the motion was found under 11 U.S.C. § 1109(b). An important consideration in the case was that the debtor wanted the union contract rejected and supported the creditors' committee's motion. It did not bring the motion itself out of concern that its rejection of the labor contract would result in the union's bringing an unfair labor practice charge. The debtor was cooperating fully with the creditors' committee.

In the case at hand, there is no adversary proceeding. A motion to sell under § 363 is a very different type of proceeding than an adversary proceeding in fact. It is also a far different situation from that of *Parrot Packing Company, Inc., supra*. A motion to sell, in general, involves a need by the debtor or creditor's committee to be able to negotiate rather freely. Details of a sale including closing dates, fixtures and personal property to be included, etc. all necessitate a party who is able to make promises and representation to a purchaser the party can keep. In a case such as this, where the debtor and the creditors' committee are at odds as to how and when a sale of the debtor's major asset should be accomplished, this necessary component of any negotiation is missing. Therefore, this case is unlike any of those in which the creditors' committees were granted the power to maintain an action on the estate's behalf.

Other than in an unusual case like *Parrot Packing* where the debtor is fully cooperative, I do not think the creditor's committee's § 1109(b) or § 1103(c)(5) powers should be allowed to be extended to motions or proceedings involving the ongoing operations and business judgments of the debtor. It simply creates too many obstacles.

The discussion herein is true whether the Court considers the issue to be that of granting the power to sell to the creditors' committee itself or granting the power to the trustee upon order of the Court or direction of the creditors' committee. My

decision encompasses these possibilities also.

## II.

The Debtor also objects to the Unsecured Creditors' Committee's motion on the basis that the Court lacks independent authority under 11 U.S.C. § 105 [5] to sua sponte issue an order authorizing a sale of property free and clear of liens or empowering the unsecured creditors' committee to sell property in such a manner. In light of the restrictive interpretation which has been imposed on § 105, as well as many of the considerations discussed above concerning the standing of the Unsecured Creditors' Committee, I am not at this time inclined to extend the equitable reach of § 105 to the circumstances of this case.

■ It is true that bankruptcy courts are essentially courts of equity, and its proceedings are inherently proceedings in equity. *In re Shumate,* 39 B.R. 808, 814 (Bktcy.E.D.Tenn.1984); *In re Small,* 38 B.R. 143, 147 (Bktcy.D.Md.1984); *In re Dailey,* 36 B.R. 147, 149–50 (Bktcy.D.Minn. 1983); *In re Petur U.S.A. Instrument Co., Inc.,* 35 B.R. 561, 563 (Bktcy.W.D.Wa. 1983); *In re Cormier,* 35 B.R. 424, 425 (Bktcy.D.Me.1983); *In re Napoli,* 34 B.R. 25, 27 (Bktcy.E.D.N.Y.1983); *In re Grocerland Co-op, Inc.,* 32 B.R. 427, 433 (Bktcy. N.D.Ill.1983); *In re Project 5 Drilling Program,* 30 B.R. 670, 674 (Bktcy.W.D.Okla. 1983). A court's broad equitable powers, however, may only be exercised in a manner consistent with the provisions of the Bankruptcy Code. *Johnson v. First National Bank of Montevideo, Minnesota,* 719 F.2d 270, 273 (8th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984);[6] *see also In re Rath Packing Co.,* 35 B.R. 615, 621 n. 14 (Bktcy. N.D.Iowa 1983) (discussing *Johnson* decision, court notes that issuance of stay under § 105 is inappropriate inasmuch as § 362 of the Code would afford the debtor adequate relief).

■ Under the circumstances of the Committee's present motion for authority to sell free and clear of liens, the exercise of this Court's equitable powers to achieve a § 363(b) sale would not be consistent with the provisions of the Bankruptcy Code. *Cf. In re Dunckle Associates, Inc.,* 19 B.R. 481 (Bktcy.E.D.Pa.1982). A somewhat analogous case, *Dunckle* involved a motion by a secured creditor of the debtor to obtain a superpriority lien under 11 U.S.C. § 364(d) for expenditures in winterizing the debtor's major assets. Noting that the Code explicitly provides only that a trustee or debtor-in-possession is empowered to incur a debt secured by a superpriority lien, the court concluded that Congress' omission of a secured creditor from that category was not inadvertent. Section 364(d) was held not to provide a basis for granting such a lien to a secured creditor, absent application of the trustee or debtor-in-possession.[7] In addressing whether a secured creditor could achieve the same result by way of the court's equitable pow-

---

**5.** Section 105 provides in full:

(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

(b) Notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title.

11 U.S.C. § 105 (amended 1984).

**6.** In *Johnson,* the Court of Appeals held that "absent a specific grant of authority from Congress or exceptional circumstances, a bankruptcy court may not exercise its equitable powers to create substantive rights which do not exist under state law." *Johnson,* 719 F.2d at 274. As to when a bankruptcy court possesses the authority to toll or suspend the running of a state statutory redemption period, the court further held that exceptional circumstances exist where there is fraud, mistake, accident, or erroneous conduct on the part of the foreclosing officer.

**7.** In contrast to the present situation, the *Dunckle* court never addressed the applicability of 11 U.S.C. § 1109(b). The absence of any such discussion, however, should not materially affect that court's subsequent consideration of its equitable powers under § 105.

ers under § 105, it was indicated that "equity should contradict clear legal principles in only rare instances." *Dunckle*, 19 B.R. at 486.[8] The court rejected the creditor's § 105 arguments, additionally noting in part that a less intrusive alternative existed in the statutory framework under 11 U.S.C. § 362(d)—for lifting of the automatic stay.

In the present case, the exercise of § 105 powers to make an Order empowering the Creditors' Committee to effectuate a § 363(b) sale would not be consistent with the provisions of the Bankruptcy Code. As I have already indicated above, § 1109(b) and § 1103(c)(5) should not be extended to apply to the facts herein. To permit a contrary result by way of this Court's equitable powers would be inconsistent with the rule set out in *Johnson v. First National Bank of Montevideo, supra*. Moreover, as in the *Dunckle* decision, there exists less intrusive alternatives to the action presently objected to by the Debtor. For example, the Committee is entitled to bring a motion under 11 U.S.C. § 1112(b) to convert this case to a case under Chapter 7, or it may seek the appointment of a trustee under 11 U.S.C. § 1104.

### III.

I do not need to reach the issue of the adequacy of notice raised by the Debtor in light of my decision on the standing of the creditors' committee.

### IV.

I do not feel I have left the creditors' committee in this case, or any other case, without recourse. The creditors' committee has also brought a motion for the appointment of a Chapter 11 trustee which I had continued indefinitely in light of the lack of objection to the creditors' commit-

tee's motion for authority to sell. At the December 26, 1984 hearing, I specifically placed that matter back on for hearing also on January 4, 1985. The grounds for appointment of a trustee are "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause" under 11 U.S.C. § 1104(a)(1) or "if such appointment is in the interest of the creditors" under 11 U.S.C. § 1104(a)(2). If the creditors' committee is able to show that debtor has failed to exercise due diligence in proceedings with a sale of its real estate, this may constitute incompetence, gross mismanagement or interest of the creditors. I take no position on this issue at this time.

In any event, appointment of a Chapter 11 trustee would allow the negotiation of a sale without the necessity of relying on the debtor-in-possession's cooperation. This is a more appropriate result.

IT IS THEREFORE ORDERED, that:

1. The motion of the Unsecured Creditors' Committee for authority to sell property free and clear of liens is dismissed; and

2. The motion of the Unsecured Creditors' Committee for appointment of a Chapter 11 trustee is continued for further hearing to January 4, 1985 at 1:00 P.M.

---

**8.** The quoted language in *Dunckle* appears to state a somewhat broader principle than that expressed in the Eighth Circuit's *Johnson* opinion. In light of the decision in *Dunckle*, however, it is unnecessary to address at this time the question of the compatibility of the two opinions.