In re Daniel D. DAILEY and Lorene A. Dailey, dba Friends Furniture, Inc., Debtors,

and

In re FRIENDS FURNITURE, INC., Debtor.

Bankruptcy Nos. BKY 4–82–491, BKY 4–81–2219.

United States Bankruptcy Court, D. Minnesota.

Nov. 1, 1983.

Robert C. Neill, St. Paul, Minn., for William P. Westphal, Sr., U.S. Trustee.

Richard Nadler, St. Paul, Minn., for debtors.

## ORDER DENYING CONFIRMATION AND CONVERTING TO CHAPTER 7

JOHN J. CONNELLY, Bankruptcy Judge.

The above-entitled matters are before the court today for hearing on the motion of the United States Trustee seeking various reliefs, the principal one being denial of confirmation of the debtors' plan of arrangement. Robert C. Neill, attorney, appeared for William P. Westphal, Sr., United States Trustee, Richard Nadler appeared on behalf of the debtors, and there were various other appearances as stated in the court's minutes and record of these proceedings.

The above matters were before this court on September 30 on a hearing for confirmation of debtors' plan of arrangement. At the conclusion of the proceedings on that date, the court reserved its judgment as to whether or not to confirm the plan of arrangement. The motions today bring into sharp relief the issue of confirmation.

Upon all the files and records herein, the transcripts of the proceedings previously held, briefs, and statements of counsel, the court now makes the following memorandum order which shall serve as its findings, conclusions of law, and order in conformity with the Bankruptcy Rules of Procedure.

## MEMORANDUM ORDER

These proceedings began with an involuntary petition being filed on October 30, 1981 against Friends Furniture, Inc., such case subsequently being converted to a Chapter 11 proceeding. The principals of Friends, the Daileys, filed for Chapter 11 relief due to a large number of pre-incorporation debts of Friends. The debtors filed an initial proposed Chapter 11 plan of reorganization on October 25, 1982 and subsequently filed an amended plan of arrangement on August 11, 1983. Hearing on the confirmation of the debtors' amended plan of arrangement was first set for August 31, 1983. Another amended plan was filed on September 6, 1983 and hearing thereon was held September 30, 1983.

The plan proposed by the debtors in these proceedings was a liquidation plan. It called for surrender by the debtors of all the debtors' remaining inventory, around $22,000.00 worth, to John Hudson and Associates (Hudson). Hudson, who is a liquidator, proposed to gather furniture from various bankrupt furniture dealers and add furniture from non-bankrupt sources in order to, in effect, conduct an ongoing liquidation sale at two permanent sites, one in St. Paul and one in Little Canada, and to conduct similar sales at various armories throughout the state. The sales were to be conducted over the course of two years. In return for its turnover of $22,000.00 of inventory, Friends was to receive from Hudson the cost of Friends' furniture sold plus five percent on that furniture, plus seven percent of the gross sales of all furniture sold at the various sale locations. In addition, Hudson was to post a $100,000.00 fidelity bond guaranteeing faithful performance. As a result, under the agreement between Hudson and the debtors, the debtors would have received approximately $90,000.00–$100,000.00 for their $22,000.00 worth of inventory.

Due to the nature of the furniture, its liquidation value under a Chapter 7 would likely net unsecured creditors less than 10 percent on the dollar. The creditors of Friends were therefore not opposed to the novel arrangement proposed by the debtors which would give a significantly higher return to creditors.

Judge Owens, at the August 31 hearing on the plan, granted the debtors provisional approval to proceed with the sale, at least until such time as the plan could be finally approved. The transcript of that hearing reveals that Judge Owens was less than happy about the length of the "sales" and about the prospect of the advertising using the words "bankruptcy" or "bankruptcy sale" when the sales were not true bankruptcy sales. A written order authorizing the appointment of Hudson as liquidator was submitted and was pending before Judge Owens at the time of his death in late September.

The transfer of furniture and subsequent sales occurred even without the written order authorizing the appointment of the liquidator. In the month between the August and September hearings, approximately $3,000.00 of Friends' stock of inventory was sold and a check was issued to Friends from Hudson for $4,100.00.

At the September 30 hearing, this court voiced its concern over the length and terms of the sale and over the possibly misleading nature of the advertising related to the sales. The court took both the plan and the application to appoint a liquidator under advisement.

Since the September hearing, several events which show the propriety of the court's action occurred. First, a motion was filed by the U.S. Trustee to terminate the debtors' operations and to deny confirmation of the plan. That motion reveals to the court for the first time that John Hudson, the principal of Hudson, entered into an Assurance of Discontinuance with the Minnesota Attorney General's office on January 27, 1983. Among the many practices Hudson had agreed to discontinue were:

"3. Advertising or offering for sale at any 'bankruptcy sale', 'liquidation sale', or sale of similar import, merchandise which was not originally part of the inventory or stock being liquidated, but which was added to the stock before or during the sale for purposes of the sale."

John Hudson had thus agreed, both as principal of Hudson Sales, Inc., itself a Chapter 11 debtor, and *individually* to not engage in exactly the type of practice proposed and engaged in here. Secondly, the check issued to Friends by Hudson bounced and has since not been honored; therefore no income has come into the estate. Thirdly, upon filing of the trustee's motion, Hudson voluntarily ceased its sales. Thus, no further income is forthcoming to the estate. Lastly, it appears the application for fidelity bond was never completed by Hudson.

While the plan itself is not illegal within the meaning and intendment of the Code, the proposed methods for carrying out the liquidation pursuant to the plan clearly appear to this court in some respects to be contrary to state and municipal laws regarding bankruptcy sales, specifically City of St. Paul Legislative Code Sections 325.01, 325.03, and 325.05(2) and (3) and M.S.A. Sections 325D.44 and 325F.67 (1982). It appears to this court, without going into detail but referring to the records herein, that the proposed liquidation may violate the above statutes and others as such relate to "bankruptcy" and "liquidation" sales. The methods suggested and proposed in these particular cases in a sense would make use of the bankruptcy court's name and could conceivably compromise the integrity of this court if allowed to proceed. Facts revealed at the October 24 hearing, as set out above, place in sharp relief the dangers of the court approving a sale such as the one that was proposed in these proceedings.

The amount of merchandise remaining to be liquidated in these estates has been estimated to be worth between $15,000.00 and $18,000.00. The debtors had engaged the services of a liquidator who obviously has not lived up to his agreement with the debtors. The debtors now seek to continue this Chapter 11 as such in a liquidation under that chapter. The court believes, instead, the case should be converted to a Chapter 7 liquidation.

■ The Bankruptcy Court is a court of equity and has wide jurisdiction to make

appropriate disposition of cases that come before it. *See,* e.g. 11 U.S.C. Section 105. This includes the power, under Section 105 and Section 1112 of the Code, to convert a reorganization case to a liquidation case whenever it is in the best interests of the creditors of the estate that this be done upon proper cause shown under 1112(b). Cause is shown here in the failure of the debtors to be able to secure the confirmation of the plan which they have submitted to the court. The parties have indicated to the court that no other method of funding the Chapter 11 exists outside the method herein presented. This innovative method, as such a "last resort" not being acceptable to the court due to the above-stated facts, it is apparent that the debtors will not be able to secure the confirmation of a plan acceptable to both the creditors and the court. Thus, cause exists for conversion.

It is further evident that conversion is in the best interests of the creditors. No alternative method of effectuating the plan is in sight, the property of the debtor-in-possession is in the hands of an apparently uncooperative and recalcitrant liquidator, and no payment for the inventory sold has yet been made nor is likely to be made. Under this yet unconfirmed plan as currently effectuated, the creditors will receive nothing. From a Chapter 7 liquidation, some amount of money, be it 10% on the dollar of the value of inventory, will be received and distributed. The creditors are thus best served by conversion to Chapter 7.

As conversion is proper, the next issue to be addressed is whether the court has the power to convert a case under 1112(b) by its own motion. The statutory language of 1112(b) states:

"... on request of a party in interest, and after notice and hearing, the court may convert a case under this chapter to a case under chapter 7 of this title...."

Such statutory language is silent on the court's sua sponte power to convert. The legislative history is not silent:

"Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case *sua sponte* ... or the

court is permitted to convert a reorganization case to a liquidation case .... The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases. The power of the court to act *sua sponte* should be used sparingly and only in emergency situations." Senate Report No. 95–989, 95th Cg. 2d Sess. 117, U.S.Code Cong. & Admin.News 1978, p. 5787 (1978)

The legislative history of 1112(b) would seem to indicate that Congress was aware, although the Senate version of 1112(b) was not incorporated in the final Code, that certain unusual circumstances might arise wherein the court could properly exercise its equitable powers to issue an order appropriate to the terminal disposition of the case before the court.

*In Re Nikron,* 27 B.R. 773 (Bkrtcy.E.D. Mich.1983), is instructive for present purposes. There, the court, after finding the plan was not filed in good faith, converted the case from a Chapter 11 to a Chapter 7 on its own motion. Following a thorough recitation of the legislative history of the power of the court under 1112(b), the court there found inferential support for sua sponte conversion from Sections 1108 and 1129 of the Code. Section 1129 gives the court power to confirm a plan only when the requirements of 1129 are met. The court labelled "untenable" any conclusion other than that the power to convert or dismiss would follow a finding of lack of satisfaction of the 1129 requirements.

The *Nikron* court noted that Section 1108 states:

"[u]nless the court orders otherwise, the trustee may operate the debtor's business."

The sua sponte power to terminate operations under 1108 upon a finding of "continuing loss to or dimunition of the estate and the absence of a reasonable likelihood of rehabilitation" and thus create a dead shell Chapter 11 debtor, must necessarily lead to the power to convert the non-operating debtor to Chapter 7 and subsequent liquidation. Therefore, this court has the power,

under Section 1112(b) of the Code, to convert this Chapter 11 case to a Chapter 7 liquidation.

A different basis for the finding of the sua sponte power to convert is found in 11 U.S.C. 105(a) which gives the court power to issue any order necessary or appropriate to carry out the provisions of the Code. Such inherent or traditional powers of the court include the sua sponte power to convert, dismiss, or make other appropriate disposition. *Banque de Financement v. First National Bank of Boston,* 568 F.2d 911 (2d Cir.1977). Such power continues under the Code: "The section (105(a)) is repeated here for the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court...." House Report No. 95–595, 95th Cg., 1st Sess. 316, U.S.Code Cong. & Admin.News 1978, p. 5787 (1977). See also, *In Re Stahl, Asano, Shigetomi Assoc.* 6 B.R. 232 (Bkrtcy.Haw.1980).

 This court does not advocate regular use of this power. However, when exigency exists, where the unusual and pressing case demands the utilization of the power, the court should not shy away from its duty. This is true regardless of the establishment of this district as a pilot district for the U.S. Trustee program. The existence of the U.S. Trustee does not remove the power to convert, it merely requires the court to be more circumspect in exercising that function:

> "The court's power to convert sua sponte, inferable from sections 1108 and 1129(a), would seem to exist regardless of whether the case arises in a pilot or a non-pilot district. However, in a pilot district this power should be used sparingly." *Nikron,* at 778 f.n. 6.

This case is a proper one for exercise of sua sponte motion to convert. Failure to convert immediately would result in continued costly judicial proceedings concerning a possible furtherance of the Chapter 11 liquidation. The creditors here have shown their intent to follow along in the reorganization, in the vain hope that meaningful distribution would be forthcoming. The

facts surrounding the proposed liquidation sale, the manner in which it has been conducted, and the manner in which it is proposed to be continued upon confirmation of the debtors' plan show that use of the equitable powers of the court under 1112(b) and 105(a) is necessary in order to reach a result appropriate in this case. To do other than to convert this case now would be harmful to the creditors of the estate, the debtors, and the bankruptcy court itself.

ACCORDINGLY, IT IS ORDERED AND IS THE JUDGMENT OF THIS COURT that the debtors' plan of arrangement in the above-entitled proceedings be and same is hereby ordered not confirmed, and

IT IS FURTHER ORDERED that the above-entitled Chapter 11 proceedings be and the same are hereby converted to proceedings under Chapter 7 of the Bankruptcy Code and liquidation of the estates is directed to be proceeded with immediately.