**In re BAYOU SELF, INC., Johnny Carl Canino, Jr., Glenn E. Gilley and Jeanne L. Gilley, Michael Hillman, Carmen Ray Schroedter d/b/a Automation USA, Carrol L. Viator, Linda L. Viator, Debtors.**

Bankruptcy Nos. 485–01676–LO–11, 486–00301–LO–11, 485–01652–LO–11, 486–00903–LO–11, 486–00302–LO–11, 485–01651–LO–11.

United States Bankruptcy Court, W.D. Louisiana.

Jan. 27, 1987.

John W. Hutchison, Lafayette, La., for debtors.

OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

Attorneys for the above-named debtors sought dismissal of this court's *sua sponte* Rule to Show Cause why these cases should not be dismissed, or converted, or a trustee appointed. All parties were served with the Rule to Show Cause prior to hearings on January 9, 1987. The debtors' motion was denied at that time, and this Opinion supplements and states in greater detail the reasons orally given for that denial.

The debtors contend essentially that the court, prior to November 26, 1986, could not take steps looking toward possible dismissal or conversion because of language in 11 U.S.C. 1112(b) providing that a court may dismiss or convert a Chapter 11 case on request of a "party in interest". This position is tantamount to an assertion that the court on its own motion cannot take action to control its own docket, to deal with failures to prosecute, or to obtain compliance with its own orders. The contention relying on the "party in interest" pro-

vision fails to give effect to other provisions of the Bankruptcy Code and to its legislative history.

The debtors rely in part on Section 105 of the Bankruptcy Code [11 U.S.C. § 101 *et. seq.*] as amended by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 [P.L. 99–554]. Section 105(a) was amended to state that "No provision of this title providing for the raising of an issue by party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process".[1] That amendment became effective November 26, 1986, as provided by Section 302(a) of P.L. 99–554. The Rule to Show Cause in each case was signed a few days prior to November 26, 1986, though served on December 1, 1986. The debtors contend that until the amendment became law on November 26, the court did not have the power to act on its own initiative to bring issues of potential dismissal or conversion before it.

The court disagrees. The amendment to Section 105 was a clarification or codification of prior law, not a change in that law. Prior case-law indicates that the vast majority of courts dealing with the issue have concluded that the bankruptcy courts have *sua sponte* power to dismiss to convert. *In re Cricker*, 46 B.R. 229 (Bankr.N. D.Ind.1985), held that the bankruptcy.court can *sua sponte* dismiss or convert a case, but only after notice and a hearing at which evidence may be presented that provides a factual basis for the court's decision. The rule to show cause procedure attacked in the motion *sub judice* provides both notice and hearing. Similarly in *In re Coram Graphic Arts*, 11 B.R. 641 (Bankr. E.D.N.Y.1981), the court held that under Sections 105, 305, and 1112(b) of the Bankruptcy Code, it had an inherent duty to supervise and insure orderly administration of cases and the power to dismiss or convert on its own motion. The *Coram* court noted that *sua sponte* dismissals and conversions should give due weight to the facts and equities of the particular case and should not occur simply whenever court is not satisfied with progress toward reorganization. *In re Dailey*, 36 B.R. 147 (Bankr.D.Minn.1983), held that the bankruptcy court has the power to dismiss or convert *sua sponte*, cautioning however that the power should not be regularly used in U.S. Trustee districts. The decision relied on the court's power under Section 105(a) to issue any order necessary or appropriate to carry out the Bankruptcy Code, Section 1112(b), the requirements for Chapter 11 confirmation under Section 1129 which impose an independent duty on the judge to determine if a reorganization plan can be confirmed, and the provision in Section 305 allowing dismissal of a Chapter 11 on the court's own motion. *See also In re Kleeman*, 54 B.R. 62 (Bankr.D.Mo.1985) dismissing a Chapter 11 for failure to prosecute; *In re Nikron, Inc.*, 27 B.R. 773 (Bankr E.D.Mich.1983) extensively discussing the legislative history of the 1978 Bankruptcy Code and pointing out that under Section 1108 a court *sua sponte* can order a trustee to terminate operation of a debtor's business, in effect forcing a conversion to Chapter 7; and *In re Odom Enterprises*, 22 B.R. 785 (Bankr.E.D.Ark.1982) dismissing where there were inadequate monthly reports and an inadequate disclosure statement.

This court is aware of a Second Circuit holding that the bankruptcy court does not have power *sua sponte* to dismiss or convert a Chapter 11 case. *In re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir.

---

**1.** This judge and his predecessor have in each new Chapter 11 case issued an Order to Debtor in Possession requiring, *inter alia,* the filing of monthly reports, and within 120 days, the filing of a plan of reorganization. There are numerous instances where plans of reorganization have not been filed within anything remotely approximating the 120 day period (in some cases not even within 2 years), and/or where no monthly reports have ever been filed, or where no current monthly reports have been filed. By withholding monthly reports showing disbursements and receipts, assets and liabilities, and changes in income, debtors can prevent creditors and the court from monitoring progress, if any, toward rehabilitation, or discovering, as is too often the case, that the debtor's estate is being eaten up by continuing losses and expenses.

1984). This case is not binding authority on this court. The Fifth Circuit in *In re Little Creek Development Company*, 779 F.2d 1068, 1071, n. 1. (5th Cir.1986) supported *sua sponte* power—after notice and hearing—to dismiss Chapter 11 cases filed in bad faith but did not provide its views on the "party in interest" language in Section 1112(b).

The Fifth Circuit has, however, provided further general guidance in its decision on rehearing *en banc* in *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363 (1987). It appears that all judges of the court agreed that it is the duty of the bankruptcy judge to provide early, tight, and fair management of Chapter 11 cases. This would not be possible in a vast majority of Chapter 11 cases if the judge had to wait for a motion of a "party in interest". In most Chapter 11 cases, particularly the smaller ones, creditors, particularly unsecured creditors, are inactive. The debtor's obligations are so spread among a multitude of creditors that frequently no creditor, or creditors' committee if there is one, has a sufficient stake to pursue its interests. Yet, the creditors collectively over a number of cases can sustain substantial and needless losses if measures are not taken to insure that prompt efforts are taken to rehabilitate the debtor, if possible.

These realities were recognized in *Timbers of Inwood Forest*. Judge Randall, writing for the majority *en banc* stated:
"Early and ongoing judicial management of Chapter 11 cases is essential if the Chapter 11 process is to survive and if the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved. In almost all cases the key to avoiding excessive administrative costs, which are borne by the unsecured creditors, as well as excessive interest expense, which is borne by all creditors, is early and stringent judicial management of the case. We recognize that Congress, in 1978, amended the bankruptcy laws with the intention of removing bankruptcy judges from the administration of the debtor's estate. The purpose of this amendment was to insure the impartiality of the bankruptcy judge. We do not believe, however, that Congress thereby intended to relieve the bankruptcy judge of the responsibility of managing the cases before him in such a way as to promote the objectives and goals of the Bankruptcy Code. Our conclusion in this respect is strengthened by the fact that the bankruptcy court is an adjunct of the district court. District court judges function under Fed.R.Civ.P. 16 with full power and responsibility to manage their cases and with the directive to move their cases in such a way as to promote fairness to the parties and judicial economy. These responsibilities are not incompatible with their judicial function; indeed, they are at the core of it. We recognize that the line between administration of the debtor's estate that would jeopardize the bankruptcy judge's impartiality and effective case management may sometimes be a difficult one to draw. Nevertheless, we think that each bankruptcy judge is called upon to manage the cases in front of him, fairly impartially and in such a way as to promote their orderly and prompt disposition. The difficulty in ascertaining where the line is to be drawn cannot be an excuse for a judge's abdication of his responsibility to function as a judge. [At pp. 373–374, footnotes deleted.]

Footnote 17 from Judge Randall's opinion states:

17 Statistics compiled by the Administrative of United States Courts reflect that on a nationwide basis, only thirteen percent of the Chapter 11 cases terminated in 1985 were fully administered under Chapter 11, as distinguished from being dismissed or otherwise disposed of; in the Fifth Circuit in 1985, only five percent were fully administered. These statistics make it amply clear that in the vast majority of Chapter 11 cases, the statutory objective of reorganization cannot be realized. The challenge to the bankruptcy courts is to recognize these cases as promptly as possible and thereby to limit the administrative expense and other costs (including interest expense) borne by creditors. [At p. 373]

Chief Judge Charles Clark in *Timbers* states as a "basic principle" that: "Reorganization is not a Holy Grail to be pursued at any length. Creditors are entitled to a prompt determination of efficacy." [At p. 374]

Judge Jones in her opinion for the dissenters stated:

"The sad fact is, ... that the vast bulk of of reorganizations culminate in liquidation by a plan, conversion to Chapter 7, or withering away during bankruptcy proceedings. Over the last five years, the Administrative Office of the United States Courts reports that 90% of Chapter 11 cases nationwide fail to terminate within the provisions of Chapter 11." [At p. 382.]

By reason of the foregoing, this bankruptcy court concludes that it has, and has had, the power to dismiss or convert a Chapter 11 case *sua sponte*, after notice and opportunity for hearing.